[Civil No. 2907. Filed July 15, 1930.]

[289 Pac. 985.]

CHICAGO FIRE AND MARINE INSURANCE COMPANY, OF CHICAGO, a Corporation, Appellant, v. C. C. SHARPENSTEEN, Appellee.

Mr. William Forman (Mr. W. Howard Gray, of Counsel), for Appellant.

Mr. William H. Westover and Mr. J. F. Hoover, for Appellee.

McALISTER, J.—On March 15, 1928, C. C. Sharpensteen sold an automobile to one F. J. Woods under a conditional sales contract and within a few days thereafter the Chicago Fire and Marine Insurance Company of Chicago, for a consideration of $12.50 insured him against loss sustained by reason, among other things, of "the fraudulent concealment or disposal of said automobile by the vendee with intent to defraud the vendor." The car was driven from the state in April afterwards by the vendee without the consent of the vendor and never recov-

ered. Proof of loss in the sum of $292.75, the amount due thereon, was furnished the company, within the proper time but payment was refused, whereupon this action was brought.

The ground upon which the company declined to settle was that by the terms of the policy the insured had expressly warranted that the car was registered with the Motor Vehicle Department of the state of Arizona and that he held a certificate of title thereto when in fact the car had not been so registered and neither the plaintiff nor vendee, Woods, held such certificate of title.

The automobile described in the policy of insurance was a 1926 Dodge touring car, serial number A–236810, motor number A–563873, and in the conditional sales contract signed by plaintiff and Woods the same description appears except the year model is 1925. The certificate of title introduced by plaintiff as showing compliance by him with the statute relative to title was issued by the Secretary of State to A. F. Larsen on December 31, 1925, and describes a 1925 Dodge touring car, serial number A–238610, engine number A–310580. This certificate recites that the applicant stated that he was the owner of the motor vehicle but that it was subject to the following lien: ''Amount—$480.00, Four Hundred Eighty & No/100 'Dollars. Kind—Conditional. Date 10–27–25. Favor of San Francisco Securities.''

On the back of this certificate Larsen assigns and transfers his title to F. J. Woods under date of April 9, 1927, and in the assignment is the statement that the car is subject to the lien of C. C. Sharpensteen for $292.75 under a conditional sales contract. The following language appears just below the transfer of title: ''This assignment accompanied by a fee of one dollar must be filed with the Secretary of State within ten days from date of sale together with application for transfer of license plate,'' and it is

signed by F. J. Woods just over the words, "Signature of purchaser or transferee."

Plaintiff testified that he bought the car from A. F. Larsen the day he sold it to Woods, March 15, 1928; that after selling it he applied to A. H. McClure, an insurance agent in Yuma, for insurance and handed him at the time the conditional sales contract, the purchaser's statement, and the certificate of title, which McClure examined before writing the policy; that he gave McClure other information at the same time though nothing was said by McClure about the necessity of registering the car with the Motor Vehicle Department of the state before an insurance policy on it would be good; that he got the policy, which is dated March 27, 1928, a few days later and immediately afterwards wrote the Highway Department concerning the transfer or issuance of the certificate of title to Woods, inclosing a check for one dollar in payment, and received a reply dated April 11, 1928.

It appears from the testimony of B. F. Whiting that he sold the car to Larsen October 27, 1927, and that after selling it to him he replaced its motor block, though he states that this was done on July 1, 1926, and that the number of the block he put in was A–563873.

Everett B. Johnson, the notary before whom A. F. Larsen acknowledged the transfer of title to F. J. Woods, testified that the ordinary method of acknowledging those certificates of title is this: when an old car is traded on a new one the dealer does not then know to whom the old one will be sold, so he has it signed by the owner and acknowledged and later he fills in the name of the person to whom he sells it.

A. H. McClure testified that plaintiff did not show him the certificate of title in the name of Larsen when he applied for insurance; that the first time he saw

it was about one month before the trial and that nothing whatever was said by either of them about the title or the certificate of title.

The case was tried before the court without a jury and resulted in a judgment for the plaintiff in the amount sued for, $292.75, and the defendant has appealed.

The first assignment is that the court erred in rendering judgment for appellee for the reason that it does not appear from the record that he owned the car described in the insurance policy or had any insurable interest therein when the policy was issued to him or afterwards, and this follows from the evidence which, it is contended, shows that the car described in the insurance policy is a different car from the one described in the certificate of title introduced in evidence by appellee as showing compliance by him with the law requiring the owner of a car to have a certificate of title thereto. It appears that neither the year model nor the serial and motor numbers of the car thus described are the same. However, the difference, first, in motor numbers, in the light of the testimony of B. F. Whiting regarding his knowledge of the car and the replacement by him of its motor block, instead of indicating two separate cars, indicates strongly that the cars described in these two instruments are the same. And, second, the serial numbers, A–236810 in the insurance policy and A–238610 in the certificate of title, are so nearly identical that the court, in connection with the testimony of Whiting, was justified in concluding that they were intended to be the same, since the transposition in the second number of the middle figures of the first, "6" and "8," was evidently nothing more than a mere clerical error in the preparation of the certificate of title to Larsen. And, third, the difference between the year model of the car described in the insurance policy, 1926, and the year model of the

car referred to in the conditional sales contract and the certificate of title to Larsen, 1925, is likewise insufficient to establish the fact that more than one car was involved, since appellant's agent, according to the testimony of appellee, had before him both of these instruments when the application for insurance was made and examined them to obtain the data necessary to insert in the policy.

To show further that the cars described in the insurance policy and the certificate of title were not the same appellant directs attention to the fact that Whiting testified that he sold the car to Larsen on October 27, 1927, which was four months prior to the date on which appellee says he bought it and more than six months later than the date of the acknowledgment of the transfer of title. Inasmuch, however, as he testified further that he replaced the motor block in the car on July 1, 1926, *after* he had sold it to Larsen, and the certificate of title to Larsen under date of December 31, 1925, contains the statement that Larsen was the owner of the car subject to a lien of $480 in favor of the San Francisco Securities Corporation under a conditional sales contract dated October 27, 1925, the only inference that can be drawn therefrom is that Whiting confused his dates and said 1927 when he meant 1925. His testimony is susceptible of no other conclusion because Larsen could have obtained a certificate of title to the car in December, 1925, only upon the showing that he then had at least a conditional ownership in it.

It is suggested further that the statement of appellee that he purchased the car from Larsen on or a few days before March 15, 1928, the day he sold it to Woods, when considered in connection with the fact that the bill of sale or transfer of title from Larsen to Woods was acknowledged April 9, 1927, nearly a year prior thereto, indicates that more than one car was involved. This, however, in the light of

the testimony of Everett Johnson relative to the manner in which such transfers are acknowledged, amounts merely to a conflict in testimony as to when appellee's ownership began and if the earlier date be correct it would not necessarily establish the contention of appellant that the cars described in the policy and the certificate of title to Larsen were not the same.

The second assignment is that the court erred in rendering judgment for appellee because the policy contains a provision in which appellee expressly warrants that the car was registered with the motor vehicle department of the state and that a certificate of title had been issued bearing the name of appellee as vendor and the name of F. J. Woods as vendee, when in fact the car had not been so registered and a certificate of title had not been issued. It is contended that these were express warranties as to material facts and since they were untrue the policy, by virtue of one of its provisions, was void from the beginning, and in support of this proposition, *North British & Mercantile Ins. Co.* v. *San Francisco Securities Corp.*, 30 Ariz. 599, 249 Pac. 761, is cited. Whether, however, these were warranties as to material facts it is unnecessary to determine because "a warranty is inserted in the policy in the interest of the insurer, and he may waive or insist on it, as he elects." Cooley's Briefs on Insurance, vol. 5, 2d ed., p. 3947, and the evidence is such that the court could have found that the company through its agent knew they were not true and that it waived them when the policy was written. And when such knowledge exists the insurer is not permitted to insist on such warranties as avoiding the policy. "Where a soliciting agent," says 32 C. J. 1330, "has knowledge of past conditions or existing facts which at the time would serve to void the policy, the company issuing the policy with this knowledge upon the part of its

agent cannot insist upon such facts for the purpose of avoiding its liability." That the great weight of authority is to this effect is shown by the following excerpt from 14 R. C. L. 1166:

"It is usually held that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."

The application for the insurance was oral and it appears that appellant's agent made no inquiry concerning the registration of the car or the existence of a certificate of title in the name of appellee but that he had before him at the time and examined for the purpose of obtaining the data necessary to include in the policy the certificate of title to Larsen and the conditional sales contract from Sharpensteen to Woods, and while the certificate was issued to Larsen in December, 1925, and his acknowledgment of the transfer to Woods was under date of April 9, 1927, and the serial and motor numbers given in the two instruments were not identical, yet this assignment contained also the information that the title transferred by Larsen to Woods was subject to a lien of $292.75 in favor of C. C. Sharpensteen under a conditional sales contract executed by appellee and

Woods on March 15, 1928, only a few days prior thereto. It is difficult to understand how he could have examined both of these instruments without discovering that the car which he was asked to insure was the one appellee sold Woods March 15, 1928, upon which there was then due $292.75, the amount of the insurance sought and that it had not then been registered in his name with the motor vehicle department nor had a certificate of title been issued to him or the vendee, Woods, since, if these two things had happened, the certificate of title showing the assignment to Woods would not have been in appellee's possession but in the custody of the Motor Vehicle Department where it would have been sent for the purpose of securing a new certificate of title. Section 17 of chapter 3 of the Highway Code, enacted in 1927 (Acts 4th Sp. Sess. 1927, chap. 2, subchap. 3), provides that any purchaser of a car for which a certificate of title has been issued shall follow this course to obtain a new certificate, and when it appeared that appellee still had in his possession the one he received from Larsen the only reasonable inference deducible therefrom was that the car had not been registered and a certificate of title in his and Woods' names had not then been issued.

But if it be suggested that these two instruments did not give the insurer actual knowledge as to the registration of the car, or the existence of a certificate of title thereto in the name of appellee as vendor and Woods as vendee, it is very clear that they were sufficient to put it upon inquiry as to the truth of these facts, and when this condition exists the rule requiring knowledge is satisfied. "Actual knowledge of facts forfeiting a policy," to use the language of Cooley's Briefs on Insurance, volume 5, page 3959 (second edition), "is not necessary to a waiver, if the facts are of such nature that the insurer ought to have known of them by proper attention to its busi-

ness, or if attending circumstances are of such nature as to put a prudent person on his guard." In 32 C. J. 1322 is found this language:

"The Company will as a general rule be charged with knowledge of facts of which it had, through its agents at the time of the issuance of the policy, information that, if pursued with reasonable diligence, would have led to their discovery."

Paragraph 3 of the syllabus in *Huestess et al.* v. *South Atlantic Life Ins. Co.*, 88 S. C. 31, 70 S. E. 403, reads as follows:

"Where the agent of insurer was informed by the applicant that he had been rejected by other insurance companies, and that he had kidney trouble, these facts being sufficient to put a reasonably prudent man on inquiry which would have discovered the facts, such information is equivalent to actual notice." See, also, *Life & Casualty Ins. Co.* v. *King,* 137 Tenn. 685, 195 S. W. 585; *Skinner* v. *Norman,* 165 N. Y. 565, 80 Am. St. Rep. 776, 59 N. E. 309; *Edmonds* v. *Modern Woodmen of America,* 125 Mo. App. 214, 102 S. W. 601; *Morrison* v. *Wisconsin Odd Fellows' Mutual Life Ins. Co.,* 59 Wis. 162, 18 N. W. 13.

All the agent had to do to ascertain whether the car had been registered with the Motor Vehicle Department or a certificate of title in appellee's and Woods' names had been issued, if he were in doubt as to these facts after examining the conditional sales contract and the transfer of title to Woods, was to inquire of appellee, and since the record discloses that this was not done it must be held that the insurer intended to and did waive them as a ground of forfeiture. To permit an insurer who delivers a policy containing warranties he knows or under the circumstances should have known are untrue and who accepts the premium thereon to insist on such warranties as voiding the policy is not in line with the great weight of authority.

The only other assignment is that the court erred in admitting in evidence the certificate of title to Larsen. It is plain, however, from what has been said and without further discussion that this was not error.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.