PRICE, Appellant, vs. SHOREWOOD MOTORS, INC., imp., Respondent.

*November 7, 1933—February 6, 1934.*

For the appellant there were briefs by *Brennan, Lucas & McDonough* of Milwaukee, and oral argument by *Martin J. Brennan.*

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

The following opinion was filed December 5, 1933:

WICKHEM, J.    Two questions are presented upon this appeal, and a determination of either adversely to plaintiff will require an affirmance of the judgment.

The first is whether Hewitt, upon the undisputed evidence, was a servant of the defendant, as plaintiff contends, or an independent contractor, as is claimed by defendant.   The second is whether, assuming Hewitt to have been a servant or agent, he was acting within the scope of his employment as such servant or agent at the time of the accident.   Since we have determined that the second question must be answered in the negative, it will be unnecessary to consider the first.

The defendant was an authorized Ford sales agency, and the defendant Hewitt was one of its automobile salesmen. He had the right to sell automobiles at any place he desired or at any time. On the afternoon of June 20, 1932, Hewitt met a Miss Matthias, who was an acquaintance of his, and made an engagement with her for the evening of that day. His engagement with Miss Matthias was for nine o'clock, and he met her at about 9:30 or 9:45 p. m. Upon meeting Miss Matthias, Hewitt drove to a saloon in the region of Whitefish Bay and they drank a couple of glasses of beer. According to Hewitt, they then went to call upon a man who worked in a filling station and who knew the name of a prospect. They also stopped at another filling station to get the title to a car which had been traded in on one of his sales. They stopped at defendant's garage at a little after eleven o'clock, and Hewitt asked the mechanic in charge to ride around the block and listen to the motor. The mechanic acceded to the request, and during the course of the ride Hewitt asked him if he wanted a couple of beers and he assented. The three then went to a soft-drink parlor on Cambridge street, about four blocks from the garage, and stayed at this place, drinking beer, until shortly before 12:30. They then went to a saloon near the Auditorium, where they stayed until 1:55 a. m., and had several drinks. Hewitt testified that while at this place he attempted to sell a car to the bartender. The latter was the first prospect that Hewitt had tried to sell that evening. Upon leaving, Hewitt stood on the sidewalk for a moment, according to his testimony, looking at a Buick car which was parked across the street, and which he claims the bartender wanted to trade in. The party then got into the automobile, and the accident happened shortly thereafter, on the way to the garage.

It thus appears that Hewitt's trip, at its outset, was purely one of pleasure. He made an engagement with the young lady for the evening, and took her to a soft-drink

parlor for the sole purpose of drinking beer. Incidentally, accepting his version as true, he stopped at one or two places on the way to the garage to inquire for prospects or to pick up the title to a car. Upon arriving at the garage and getting a mechanic to check up on the motor, he again started out for the purpose of treating the party to some beer. Neither the proprietor of the first drinking parlor nor that of the second was a customer or prospect, nor was any attempt made to sell either of them. The whole contention that Hewitt, at the time of the accident, was acting within the scope of his employment is based upon the fact that after going to the drinking place near the Auditorium he did interview the bartender there about buying a car, and had some discussion with respect to trading in the Buick which was parked across the road from this place.

A statement of these facts leads reasonably to a single conclusion, and that is that this expedition was not undertaken in the interests of his employer, but for Hewitt's pleasure and that of his guests. This was not a trip made necessary by his duties as servant of the defendant, if servant he was, and any advances made to the bartender at his last stop were mere incidents of a pleasure trip—mere temporary diversions from the objectives of the evening. Since the trip at the outset was undertaken for purposes unconnected with the employment, there is no basis for an inference that the accident happened in the course of a detour from the pleasure trip for the purpose of discharging duties as servant or agent of the defendant. Under the principles laid down in *Barragar v. Industrial Comm.* 205 Wis. 550, 238 N. W. 368, it must be held that Hewitt was not acting within the scope of his employment at the time of the accident. His was not an employment involving set working hours. His trip was not in any sense made upon the time of the employer. He could sell cars at any time of the day that he chose to do so. By occasionally talking sales to the

bartender of a saloon during the course of a drinking party, however, he cannot turn the whole evening's activities into acts in furtherance of his employer's business.

It follows from the foregoing that the jury's affirmative answer to the question whether Hewitt at the time of the accident was acting within the scope of his employment, was not supported by the evidence.

*By the Court.*—The judgment appealed from is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 6, 1934.