FAWCETT, Appellant, vs. GALLERY and another, Respondents.

*January 7—April 28, 1936.*

For the appellant there was a brief by *Young, Everson & Ryan* of Green Bay, and oral argument by *E. L. Everson*.

For the respondents there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge*.

The following opinion was filed March 3, 1936:

MARTIN, J. The plaintiff, hereinafter referred to as the appellant, contends, (1) that at the time of the collision causing his injuries the defendant Gallery was acting within the scope of his employment by the Bogda Motor Company, and therefore the Bogda Motor Company and its insurance carrier are legally liable for the damages sustained; (2) that at the time of the collision defendant Gallery was driving and operating an automobile owned by the defendant motor company, and that the policy issued by the Hardware Mutual Casualty Company covers the liability of the motor company for the negligence of Gallery within the scope of his employment, and, also, by indorsement, covers any employee of the motor company while operating, for business or pleasure, a car "owned by or in charge of" said company.

The respondent companies contend that at the time of the collision in question the defendant Gallery was not engaged in the scope of his employment by the motor company, and that the car he was driving at said time was not owned by or in charge of said motor company. They further contend that the defendant Gallery was at the time driving his own car, having purchased it from the motor company under a deferred payment plan. We will consider the respective claims in the order indicated.

The defendant motor company operated a garage in the city of Green Bay and employed eight or nine salesmen, including the defendant Gallery. He entered the employ of said company about February 19, 1934. He was required to work from 8 a. m. to 10 p. m. each day, excepting alternate Sundays, and was also free to work any additional time he desired in selling automobiles for his employer. He was primarily responsible for a certain territory, but was permitted and encouraged to sell cars within any territory which he saw fit in the vicinity of Green Bay. He was not permitted to have any other employment. He was paid a weekly salary and received commissions on his sales if and when such commissions exceeded the amount of his salary withdrawals. He was subject to discharge or layoff at any time at the will of his employer. From time to time he was assigned to certain definite work. He was furnished by the employer with ten or more prospect cards each day, and was required to interview these prospects that day and report in writing the result and details of his interviews. He was encouraged by his employer to develop and interview additional prospects of his own. The motor company furnished him with a new Chevrolet coach, to be used by him as a demonstrator, the ownership of which was found by the jury, in its answers to the fifth and eighth questions of the special verdict, to be in the Bogda Motor Company. He was permitted to use it for personal purposes. Some nights he kept the car at the motor company garage, but was permitted to and usually did keep it in the private garage at his home.

On the evening of March 3, 1934, defendant Gallery had an appointment to meet a lady at Appleton, which is approximately thirty miles south of the city of Green Bay. He drove the car in question to Appleton, there attended a dance, and left Appleton at about 1:30 a. m. On the way home he reached the city of De Pere between 2:30 and 3 o'clock on the morning of March 4th. He made a stop in West De

Pere on a personal matter, and then continued on State Highway No. 41 across the bridge to East De Pere, turning north on Broadway, also known as State Highway No. 41. About a mile north of De Pere, he stopped at Ziehms' Tavern at approximately 3 o'clock in the morning to try to interest the proprietor in the purchase of a Chevrolet automobile. He was not there, and Gallery talked to his son in regard to a car. He left the tavern and continued north on Highway No. 41 into the city of Green Bay, entering it on Monroe avenue, which is also a part of State Highway No. 41. He continued north on this avenue to the place where the collision occurred, which is approximately a block and a half north of Mason street. He resided on the west side of the Fox river at 126 North Ashland avenue in West Green Bay. On entering the city of Green Bay the shortest route to the west side is on Mason street and across the Fox river. The shortest route from West De Pere to West Green Bay is the highway located on the west side of the Fox river. Gallery testified that he intended proceeding north on Monroe avenue to Walnut street, thence west on Walnut street across the Fox river to Ashland avenue.

It is conceded that Gallery's trip to Appleton on the evening of March 3d was entirely social and had no connection with the business of his employer, but it is contended by appellant's counsel that when Gallery was at West De Pere on his return from Appleton, he concluded to make a business call at the Ziehms Tavern in an effort to interest the proprietor in a Chevrolet automobile, and that if it were not for this business call, Gallery would have continued on to West Green Bay on the west side of the Fox river. Therefore, appellant's counsel contends that as soon as Gallery made the detour to the east side of the river at De Pere for the purpose of calling at the Ziehms Tavern, he resumed his employment and was therefore engaged in the scope of his employment when the collision occurred. The jury, by its answer to

the fourth question of the special verdict, found that at the time of the collision Gallery was engaged in and on the Bogda Motor Company business as its servant and agent, and was acting within the scope of his employment. The court set aside the jury's answer and held as a matter of law that Gallery at the time the collision occurred was not engaged in the business of his employer and was not acting within the scope of his employment.

In *Thomas v. Lockwood Oil Co.* 174 Wis. 486, 494, 182 N. W. 841, the court held that where the initial trip was the employer's and the personal detour of the servant on his own business was slight, as a matter of law the trip continued to be the employer's. The converse would be true, that is, if the trip be personal to the employee and the business deviation slight, the court may say as a matter of law that the trip continued to be the employee's. In *Barragar v. Industrial Comm.* 205 Wis. 550, 554, 238 N. W. 368, this court approved the test laid down by the New York court in the matter of *Marks' Dependents v. Gray,* 251 N. Y. 90, 167 N. E. 181, wherein the court, speaking through Mr. Justice CARDOZO, said:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

State Highway No. 41 between the cities of Green Bay and Appleton is located on the east side of the Fox river be-

tween Green Bay and the city of De Pere. It there crosses the bridge and continues south on the west side of the river to the city of Appleton. To take the highway on the west side of the river between West De Pere and West Green Bay, Gallery would have to travel four blocks west in the city of De Pere to connect with the highway leading to West Green Bay. This would be somewhat shorter than the route which he took on the east side of the river. If we are to consider distance as an element in the test, the shortest route home for Gallery on reaching the city of Green Bay would have been west on Mason street across the Mason street bridge to South Broadway, which is a continuation of the main line of travel between West De Pere and West Green Bay. In this connection the trial court said, in its decision on the motions after verdict:

"There is nothing in the record to show that he [Gallery] ordinarily or usually took the western route when he traveled from Appleton or De Pere to Green Bay; nor did he state that such was his intention this night. As the testimony shows, he was asked: 'What would have been the shortest route for you to take from Appleton to your home in West Green Bay?' and he answered: 'Well, quite naturally, the west side of the river.' There is no testimony, and it is a fact that neither route would be considered a detour or deviation of the other. People traveling from De Pere to Green Bay use both routes and many use the western route, especially if the eastern route is congested during the busy hours of the day; and both routes are used by automobile drivers regardless of whichever side of the river they are on. While the testimony does not show this, this is common knowledge in the community. But sticking to the testimony, as disclosed in this case, Gallery did not state which route he took when he went to Appleton, and which route he intended pursuing when he came back. All that he said is that he took the east side of the river because he wanted to see Mr. Ziehms. . . . The court is satisfied Gallery intended to return from De Pere by the eastern route regardless of the Ziehms incident. He could have turned off from Monroe avenue onto

Mason street and crossed to the .west side of Green Bay. He said he intended to travel as far as Walnut street and then drive to the west. It was unnecessary for him to go that far north to again get to the west side. Mason street is paved, and in every way as suitable for vehicle traffic as is Walnut street. He could have saved six blocks' travel down Monroe avenue if he had returned to the west side by way of Mason street. The accident occurred when he continued beyond Mason toward Walnut on his way home. If he was on his employer's business and within the scope of his employment, at the Ziehms Tavern when did such service end? I believe it ended when he again took the highway to complete the purpose of his return trip; he was homeward bound from attending to personal matters."

In *Price v. Shorewood Motors, Inc.,* 214 Wis. 64, 251 N. W. 244, the action was against one Hewitt and his employer, Shorewood Motors, Inc., to recover for injuries sustained by the plaintiff when struck by an automobile owned by the defendant company and operated by Hewitt. The jury found that at the time of the collision Hewitt was a servant in the employ of the defendant motor company and acting within the scope of his employment. Upon motion, the trial court changed the answer of the jury from "Yes" to "No," and upon the verdict as so changed entered judgment in favor of the defendant motor company dismissing the action as to it. It appeared that Hewitt had a social engagement with a young lady for the evening in question. Upon meeting her at about 9:45 p. m. they drove to a saloon in the region of Whitefish Bay and there had a couple of glasses of beer. Hewitt then went to call on a man who was working in a filling station and who knew the name of a prospect. They also stopped at another filling station to get the title to a car which had been traded in on one of the sales made by Hewitt. They stopped at defendant motor company's garage at about 11 o'clock, and Hewitt asked the mechanic in charge to ride around the block and listen to the motor. While the mechanic

was in the car, Hewitt asked him if he wanted a couple of beers, and he assented. The three then went to a soft-drink parlor on Cambridge street, about four blocks from the garage, and stayed there until about 12:30 a. m. They then went to a saloon near the Auditorium, where they stayed until 1:55 a. m. and had several drinks. At this place Hewitt attempted to sell a car to the bartender. Upon leaving, Hewitt stood on the sidewalk for a moment, according to his testimony, looking at a Buick car which was parked across the street, and which he claimed the bartender wanted to trade. The party then got into the car driven by Hewitt and the accident occurred as they were on their way to the defendant's garage. This court said:

"A statement of these facts leads reasonably to a single conclusion, and that is that this expedition was not undertaken in the interests of his employer, but for Hewitt's pleasure and that of his guests. This was not a trip made necessary by his duties as servant of the defendant, if servant he was, and any advances made to the bartender at this last stop were mere incidents of a pleasure trip—mere temporary diversions from the objectives of the evening. Since the trip at the outset was undertaken for purposes unconnected with the employer, there is no basis for an inference that the accident happened in the course of a detour from the pleasure trip for the purpose of discharging duties as servant or agent of the defendant. Under the principles laid down in *Barragar v. Industrial Comm.* 205 Wis. 550, 238 N. W. 368, it must be held that Hewitt was not acting within the scope of his employment at the time of the accident. . . . It follows from the foregoing that the jury's affirmative answer to the question whether Hewitt at the time of the accident was acting within the scope of his employment, was not supported by the evidence."

The judgment of the lower court was affirmed.

Upon a careful examination of the record in the instant case, we hold that the jury's answer to the fourth question of the special verdict is not sustained by the evidence. It fol-

lows that there is no liability in the instant case on the part of the defendant Bogda Motor Company.

We now come to a consideration of the appellant's second contention, which is that at the time of the collision defendant Gallery was driving and operating an automobile owned by the defendant motor company, and that the policy issued by the defendant insurance company covers the liability of the motor company for the negligence of Gallery by reason of the indorsement in said policy which covers any employee of the motor company while operating; for business or pleasure, a car "owned by or in charge of" said company. The ownership of the car was sharply contested at the trial, the plaintiff contending that it was owned by the motor company and the defendant companies contending that it was owned by defendant Gallery. The jury found, by its answers to the fifth and eighth questions of the special verdict, that the car was owned by the defendant motor company. Are such answers sustained by the evidence? The rule is elementary that the findings of the jury must stand as verities if there is any credible evidence to support them. *Sheehan v. Lewis,* 218 Wis. 588, 260 N. W. 633, 636, and cases there cited.

Plaintiff claims that the alleged sale of the car in question to Gallery was merely a simulated, colorable transaction, with no mutual intent on the part of the motor company and Gallery that the ownership of the car should really pass to Gallery, and that the motor company remained the owner of the car. The facts on which the appellant relies to establish his claim in this regard are as follows: (1) That the Bogda Motor Company never reported having made a sale of the car to Gallery, as required by sec. 85.03, Stats.; (2) that during all the time Gallery used the car it was operated with the license plates of the motor company thereon; (3) that no certificate of title was ever issued to Gallery; (4) that under sec. 85.02 (8), Stats., which provides: "No manufacturer, distributor or dealer or his employee shall cause or permit

the display or other use of any number plate or certificate of registration which may have been furnished him *except upon motor vehicles owned by the manufacturer, distributor or dealer,"* the motor company's ownership of the car is indicated; (5) that the insurance coverage as to fire, theft, and public liability was in the name of the motor company; (6) that immediately following the collision the car was repaired by the motor company, and after being repaired it was kept by the motor company and to some extent used by its employees, and, further, the motor company never made any charge against Gallery for such repairs; (7) that the invoice for the car indicating sale has the notation, "Sold to G. A. Gallery and Bogda Motor Company;" (8) that no copy of the conditional sales note was recorded in the office of the register of deeds; (9) that when Gallery was discharged from his employment by the motor company he immediately handed over the keys to the car, and there was no discussion or comment as to the ownership of the car; (10) that the sales manager testified that if this demonstrator were sold while Gallery had it, any profit from such sale was to belong to the motor company; (11) that the car was later sold by the motor company, as owner, to a Mrs. Noel, and so reported to the secretary of state; (12) that Gallery made no payment, either as to principal or interest, on the alleged conditional sales note; (13) that the car record card, under the heading "Details of Contract," is left in blank; (14) that the motor company never made any charge against Gallery for washing and greasing service on the car.

There is attached to the insurance coverage policy issued to the motor company by the defendant insurance company the following "Additional Assured Endorsement:"

*"Additional Assureds.* The unqualified word 'assured' includes not only the named assured but also (a) any member of the firm if the named assured is a copartnership, the president, any vice president, secretary, treasurer, or other execu-

tive officer of the corporation if the named assured is a corporation, and any employee of the named assured acting with the permission of the named assured with respect to the operation, for business *or pleasure* of any automobile owned by or in charge of the named assured," etc.

From a careful examination of all the testimony bearing on the issue as to the ownership of the car, we conclude that there is a clear issue of fact for the consideration of the jury, and that the jury's findings as to the fifth and eighth questions of the special verdict are sustained by the evidence, and that the answer "Yes" to the fifth question and the answer "No" to the eighth question must be reinstated, and that the plaintiff is entitled to judgment against the defendants Gallery and Hardware Mutual Casualty Company for the damages as assessed by the jury, and that the defendant Bogda Motor Company is entitled to judgment dismissing the action as to it.

*By the Court.*—That part of the judgment appealed from dismissing plaintiff's complaint as against defendant Hardware Mutual Casualty Company is reversed, and the cause remanded, with directions to enter judgment in favor of the plaintiff and against defendants G. A. Gallery and Hardware Mutual Casualty Company, a corporation, in the sum of $15,810.65, as found by the jury. As to the defendant, Bogda Motor Company, the judgment is affirmed. Appellant to have costs.

A motion for a rehearing was denied, with $25 costs, on April 28, 1936.