REYNOLDS and others, Plaintiffs and Respondents, vs. WAR-GUS, Defendant and Respondent: NEW AMSTERDAM CASUALTY COMPANY, Defendant and Appellant.

*February 11—March 10, 1942.*

For the appellant there were briefs by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale*.

For all respondents except Eugene G. Wargus there was a brief by *Gordon, Law, Brody & Johns* of La Crosse, and oral argument by *Lawrence J. Brody*.

For the respondent Eugene G. Wargus there was a brief by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee*.

MARTIN, J. The ownership of the car driven by the defendant Wargus at the time of the accident is the bone of contention. Upon that issue and the co-operation of Wargus depends the liability of the appellant under its coverage policy. The appellant contends that the court erred in not directing a verdict in its favor; in the admission and rejection of evidence; in its instructions to the jury; and in refusing a separate trial on the issue of coverage. On the evidence there was a sharp issue of fact as to the ownership of the car driven by Wargus, appellant contending that Simpson had sold the car to Wargus the day before the accident. This was denied

on behalf of the plaintiffs, and Wargus testified that while he had had some negotiations with Simpson relative to purchasing the car, he had not agreed to buy it. He further testified that he told Simpson he would like to go to La Crosse and try the car; that Simpson let him take the car; that at that time he had not definitely made up his mind to buy it. While on the La Crosse trip the accident occurred. There is evidence that Wargus, while at the scene of the accident, stated to county highway patrol officers that he owned the car. It will serve no useful purpose to state or analyze the conflicting evidence bearing on the ownership of the car. Suffice to say that the trial court properly held that the evidence presented a jury issue. We cannot say there is no credible evidence to sustain the finding of the jury.

The appellant contends that the court erred in not directing a verdict in its favor because of failure of the defendant Wargus to co-operate in the defense of the case. It is argued that Wargus failed to appear at the trial. It appears that on and for sometime prior to November 1, 1940, Wargus was a sergeant in the army, stationed at Camp McCoy, an army camp located near Sparta, Wisconsin, about thirty miles from La Crosse. The trial of this case was begun in the court below on the 28th day of April, 1941. On April 12, 1941, Sergeant Wargus left Camp McCoy with other soldiers under what is known as a "sealed order" of the war department. Appellant also contends that Wargus, in his deposition on adverse-party examination, consciously testified contrary to an earlier statement which he had given to the attorneys for the appellant insurance company, in which statement Wargus said:

"Simpson and I agreed on all terms. I was to take over his payments of $18.28 per month and as soon as things were straightened out he was to turn title over to me. Nothing was said as to what I should pay him over the amount of payments. . . . The only reason I drove it [car] that day was because I felt sure the deal was settled. We had gone to

Dargel's garage to see about the transfer, and they said that when the finance company man came along that they would make arrangements to have him see us. . . . I haven't made any further payments since the first payment I made. I haven't heard from the finance company as to what they are doing. I heard that there might be some refund coming from the finance company but I didn't know how much. Sergeant Simpson told me it might amount to $50 or $60."

Upon his adverse examination on March 10, 1941, before a court commissioner, Wargus testified that on October 31, 1940, he loaned Simpson $18.82 to make a payment to the finance company on his car; that he had on previous occasions loaned Simpson money. He further testified:

"I did not give him the money with the understanding it was to be a payment on the car and I was to have the car if arrangements could be made. Outside of the fact of arranging to see if it would be agreeable to the finance company, this car had been driven on a round trip to Philadelphia and back and I wanted to take it out on a trial basis."

It appears that the Motors Acceptance Corporation, located at La Crosse, held a chattel mortgage or a conditional sales contract on the Simpson car; that during such negotiations as were had between Simpson and Wargus there was some discussion as to what arrangements would have to be made with the finance corporation in the event of the sale of the car. In this connection Simpson and Wargus went to the Dargel garage in Sparta to inquire if a transfer could be made. They were told that one of the agents of the finance corporation would be at Sparta the following week; that they would then let Simpson and Wargus know as to what arrangements could be made with the finance corporation. Neither Simpson nor Wargus had received any information from the finance corporation prior to the accident. The defendant War-

gus in his answer, which was made and served on the 4th day of April, 1941, alleged:

"That at the time of the accident described in the complaint the vehicle which this defendant was operating was owned by La Vaughan Simpson and that this defendant was operating said vehicle with his full knowledge and express consent."

He testified to the same effect on his adverse party examination. His deposition in full was offered and received in evidence and read to the jury. It cannot be said that Wargus voluntarily absented himself from the trial of the case. He left Camp McCoy under sealed orders of the war department on six hours' notice. He did not know his destination and was not permitted by army regulations to communicate with anyone concerning his departure. He did not notify his own attorneys. It is not argued that Wargus refused to give a full statement of the facts concerning the negotiations as to the purchase of the car to appellant's attorneys. On the whole, there is little, if any, material difference between his statement and his testimony on the adverse-party examination. It should be noted that in the statement referred to he said:

"I was to take over his payments of $18.28 per month and *as soon as things were straightened out he was to turn title over to me. Nothing was said as to what I should pay him over the amount of payments.* [Monthly payments to the finance corporation.]"

On failure of co-operation, appellants cite *Hunt v. Dollar,* 224 Wis. 48, 271 N. W. 405. The facts in that case are clearly distinguishable from those in the instant case. Here we have a rather brief statement which upon its face shows that a sale of the car had not been completed. Neither Simpson nor Wargus knew what arrangements could be made with the finance corporation. There is no evidence that the finance corporation would have accepted Wargus as a credit

risk in place of Simpson even though they had security on the car and held the certificate of title. In the *Hunt-Dollar Case, supra,* at page 53, speaking of the false statements and false swearing in that case, the court said:

"The concealment was of such nature as to tend to lead the insurer to conclude that it was justified in defending the case on the merits, whereas, if the facts as to the defendant's drinking and carousing had been disclosed, it [insurance carrier] might well have concluded to adjust the damages rather than stand the expense of a trial and the chance of an enhanced award because of the assured's conduct previous to the accident."

Wargus in his answer made a cross complaint against his codefendant, the appellant herein. We have made reference to the allegation therein that the car was owned by Mr. Simpson. Appellant argues that it was the duty of the insured to appear and testify on its behalf; that failure to do so or removal from the jurisdiction will usually constitute a breach. As a general rule that is true, but it is also true that a soldier in the army must obey his superior officers. In view of the alleged lack of co-operation and the conceded absence of Wargus from the jurisdiction of the court because of orders from the war department, it should be noted that there was no request or move made by appellant to obtain a continuance of the case until Wargus could be produced in court or his further deposition taken if that was deemed advisable. At the conclusion of the evidence the court announced that there was no evidence to go to the jury on the question of lack of co-operation on the part of the defendant Wargus. We do not find any request by appellant to have that issue submitted to the jury. We agree with the court's ruling.

Appellant contends that the court erred in refusing a separate trial on the coverage issue. Sec. 270.07 (2), Stats. 1941, provides:

"When any matter in abatement of any action triable by jury is set up, which involves the finding of any fact, the

same shall be found by a special verdict of a jury, unless a trial by jury be waived; and when there is any other issue of fact in the action, the same may be submitted to the same jury at the same time; otherwise the issue in abatement shall first be tried."

There were other issues in this case aside from the coverage issue, therefore it was proper to submit all the issues to the same jury at the same time. It was a matter within the sound discretion of the trial court whether to try the coverage issue first or try all issues together. We cannot say there was an abuse of discretion.

Appellant assigns several errors in the admission and rejection of evidence. We have carefully considered each alleged error and are of the opinion that the court did not err in either the admission or rejection of the evidence offered.

Appellant contends that the court erred in its instructions as to question 1. The question reads:

"At the time of the collision between the automobile driven by the defendant Eugene G. Wargus, and the truck driven by the plaintiff Howard Reynolds, was La Vaughan L. Simpson the owner of the automobile then being driven by Eugene G. Wargus?"

Appellant's objection is to the following sentence in the court's charge:

"Now by the word 'owner' is meant the person who holds the legal title to such a vehicle."

The court's instructions as to question 1 must be taken in their entirety. The instructions in full read:

"Now by the word 'owner' is meant the person who holds the legal title to such a vehicle. It is the law that two persons may sell and buy an article of personal property such as an automobile, by what is known as an oral contract, and if the seller's and the buyer's minds have met upon the price and all of the essential terms of the contract of purchase, and thereafter the article is delivered by the seller and accepted unconditionally by the buyer, that contract constitutes a sale.

The question of whether or not there has been any payment is not material as to making the sale legal. It may be considered as evidence of sale because where there has been a delivery and the value of the property sold is above the sum of fifty dollars, it does not come under the statute of frauds.

"Now it is the contention of the defendant insurance company in this case that at the time of this accident—the day before, these parties Wargus and Simpson met and agreed upon a price for this automobile, that the following day the car was delivered to the defendant Wargus in pursuance of that agreement and accepted by him. You are instructed that in arriving at your decision and in making your answer to question number one, you are to consider whether or not the minds of the witness La Vaughan Simpson and that of the defendant Eugene Wargus met on all the conditions of the sale of the automobile prior to the time of the collision. If you are convinced by a preponderance of the credible evidence that the price had been fully agreed upon, that $18.82 thereof had been paid down, and that the automobile was delivered to the defendant Wargus pursuant thereto, then you will answer this question 'No,' that is that Simpson was not the owner of the automobile.

"If you are not so convinced and if you believe from the testimony that something remained to be done, such as arranging the refinancing of the car, or if you believe that the defendant Wargus was using the automobile on a trial run and that the sale had not been closed subject to that trial run, then you will answer this question 'Yes.' "

This charge taken as a whole is a correct statement of the law and clearly presented to the jury the contention of the parties with reference to the ownership of the car at the time in question.

*By the Court.*—Judgment affirmed.