**LONDON ASSURANCE v. LUTFY et ux.**

No. 12454.

United States Court of Appeals
Ninth Circuit.

Aug. 30, 1950.

William A. White, Edward A. Barry, San Francisco, Cal., for appellant.

James A. Struckmeyer, Phoenix, Ariz., for appellee.

Before HEALY, BONE and LINDLEY,[1] Circuit Judges.

LINDLEY, Circuit Judge.

Appellant, on September 19, 1947, issued to appellees, upon their oral application, an insurance policy insuring them against loss by theft of their Lincoln automobile. On October 28, the car was stolen. Appellant having denied liability, appellees brought suit and recovered a judgment for $5420, the asserted value. This appeal followed.

In September, 1947, Mrs. Lutfy, who lived in Phoenix, Arizona, went to Chicago, Illinois, for the purpose of purchasing a new Lincoln Continental automobile, which she had been told was then located on the premises of the Chicgo Motor Sales Co., the Chicago Lincoln dealer. A Phoenix dealer had advised her to, and she did, contact one Marciano, who showed her the car in the agency's building. He said it was a new 1947 model. After she had examined it, finding it, as she testified, to all intents and purposes, new and unused and of the kind and character represented, Marciano took her to the Exchange National Bank, which, it developed later, held a mortgage on the car. There, they met one Jordan, in whose name, she was informed, the title then stood. Mrs. Lutfy delivered to him a Western Union money order for $5600, which the bank, after satisfying itself as to her identity, cashed, returning to her the excess over $5420, the purchase price. Jordan handed her the title papers, which she subsequently gave to Marciano, at his suggestion, upon his promise that he would have the title officially transferred to her name and that of her husband, in the Secretary of State's office in Illinois. Mrs. Lutfy then telephoned her husband in Phoenix that she had bought the car and Dr. Lutfy at once called appellant's agent, giving him the motor and serial numbers and stating that it was a new 1947 model. In due course, appellant issued the policy on which this action is based.

Mrs. Lutfy drove the car to Phoenix, using Arizona license plates, which had been removed from the Lutfy's Buick and which she had taken to Chicago. A month later, on October 28, 1947, the vehicle was stolen while parked near the doctor's office in Phoenix. Appellees never received the Illinois certificate of title. The FBI subsequently located the car in Florida. The official records of Illinois and Florida failed to show transfer to the Lutfys, but indicated that a duplicate certificate had been issued to Jordan and assigned by him, on October 22, 1947, to one Green, to whom a new certificate had then been issued.

Appellant, taking the position that the insured did not own the automobile, denied liability. The District Court, however, entered judgment in favor of appellees. Appellant urges here that the judgment should be reversed because, as it contends, (1) the Lutfys did not own the car, (2) the policy was nullified by misrepresentation and concealment of material facts by the insured, and (3) the policy was breached by appellees' inability to grant subrogation rights to appellant.

The District Court found that the Lutfys had represented to appellant that they were the sole, unconditional owners of the automobile and that it was a new 1947 model and that these representations were true, except that, although appellees had been told and believed it to be a 1947 model at the time they made that representation, the car, in fact, had been manufactured late in 1946. The court concluded that appellant was liable, thus finding, by necessary implication, that the representation as to date of manufacture was not material to the risk.

A consideration of the testimony in the light most favorable to appellees reveals that the findings have substantial

support in the evidence and reasonable inferences to be drawn therefrom. Title to the automobile was in Jordan at the time when Mrs. Lutfy, acting in good faith, bought it from him for $5420 and signed the original application for issuance of a certificate of title to her as purchaser; then and there, it seems clear, the Lutfys became the owners. Appellant's insistence that title did not pass to them because they failed to receive a certificate of title overlooks the distinction made in Illinois and elsewhere between actual ownership and a formal official certificate of title. When an automobile is purchased, a statute regulating the manner of transfer and recording titles to motor cars with a state official, does not operate to invalidate, as between the parties, the bona fide sale and delivery of such vehicles prior to registration. Smith v. Rust, 310 Ill.App. 47, 33 N.E.2d 723; Commercial Credit Corporation v. Horan, 325 Ill.App. 625, 60 N.E.2d 763. Such is quite generally the law. See 60 C. J.S. Motor Vehicles, § 41, p. 173.

It may well be that Mrs. Lutfy, by entrusting the original certificate of title and her application for transfer to her in the Secretary of State's office, thereby made it possible for Jordan, with Marciano's cooperation, to procure wrongfully a duplicate and thus to perpetrate a fraud on subsequent purchasers from him in good faith,[2] and that, subsequently, the Lutfys would be precluded from recovering the car from the present holder of the paper title; but this cannot alter the fact that, at the time they procured the insurance, they were, in fact and in law, the rightful bona fide owners.

■ With respect to appellant's contention that appellees failed to disclose that the automobile was subject to a lien at the time the insurance was procured, the evidence is undisputed that Mrs. Lutfy was not aware of the existence of any lien and fails utterly to establish that a lien did, in fact, exist at the time the insurance was procured. Appellant relies on the fact that the mortgage was, in Jordan's later fraudulent application for a duplicate title, stamped "Paid 10 16 1947", which was the date on which that application was made. There is no showing, however, that this notation was placed thereon by the lienholder, Exchange National Bank, rather than by Jordan himself, as a part of his fraudulent scheme to sell the car a second time, and it does not prove that the lien was not discharged at the time of the transaction between Mrs. Lutfy, Jordan and the bank. Since the lienholder had knowledge of and participated in the entire transaction, the natural inference is that its debt was satisfied out of the proceeds of the money order, cashed for Mrs. Lutfy by the lienholder, before it delivered the excess of the purchase price over the lien to Jordan for his equity.[3]

■ Thus, we conclude that, considering the testimony most favorable to appellees and drawing therefrom the justifiable inferences most favorable to them, the District Court's findings that they were the owners of the automobile and that they did not misrepresent or conceal any material facts in procuring the policy are amply sustained by the evidence.

■ Appellant's assertion that the Lutfys have breached the policy by virtue of their inability to grant appellant subrogation rights, we think, is without merit, for, though it may be that the car itself cannot be recovered from the present holder of the paper title, appellant may, by subrogation, acquire all rights of action of appellees against Jordan and become fully subrogated thereto. The policy does not impose upon appellees, by the term "subrogation," the duty to do an impossible thing,

2. That either Green or his assignee, Greenspon, was a good faith purchaser is open to grave doubt, for it appears that the car was in Arizona at the time title thereto was assigned to Green by Jordan and to Greenspon by Green, in Illinois. However, there is nothing to indicate that Horvath, assignee of Greenspon, was not a bona fide purchaser.

3. Since the lien had, in any event, been discharged prior to the date of the theft of the car, the policy's "Exclusions" clauses could not operate to relieve appellant of liability for the theft.

namely, to supply appellant with a right of action against a bona fide purchaser from the thief of the car.

 It is contended that appellees, by their failure to disclose that the title had not been transferred officially in the Secretary of State's office in Illinois, breached a warranty of the policy. It is undisputed that Mrs. Lutfy received the official forms from Marciano; that she signed the necessary application for a certificate of title, and then, at his suggestion, left all papers with him to be forwarded to the proper State officials. The record contains no evidence that this is not the usual and normal procedure upon the purchase of an automobile. It likewise reflects no remiss conduct upon Mrs. Lutfy's part. So far as the record discloses, she acted in the best of good faith, and, but for the breach of obligation by the man she trusted, would have become not only the owner as she actually was, but also the recorded transferee. We are not willing to say that it was appellees' duty to recite these details to appellant; they owned the car; they had paid $5420 for it; there is no evidence that such was not the fair value of the car; they had taken steps to have the transfer perfected of record and naturally believed that their instructions in that respect were being complied with. It seems obvious to us that these so-called "suppressed" facts are far from being material to the risk or from creating a warranty necessitating cancellation of the policy.

 Nor does the fact that the Lutfys placed upon the Lincoln the license plates which they had formerly had on their old car and that this fact was not communicated to appellant, serve to avoid the policy. Under the Statutes of Illinois, of which we take judicial notice, where the purchase was completed, such a transfer of license may be made, upon compliance with the statutory provisions. Obviously, appellees intended, after they had procured the recording of their purchase in Illinois, to comply with the Arizona Statute and complete registration in Arizona. At any rate, this "suppression" of fact we place in the same category as that previously discussed. We can not believe that anything which occurred in this respect increased in anyway the risk undertaken by appellant or was in any way material to the risk it undertook. At any rate, the trial court, after having heard the evidence, held, at least inferentially, that no misrepresentation or concealment of facts by appellees as to any "material fact or circumstances concerning this insurance," in the words of the policy, was made. It is not within the scope of our functions as a court of review to find otherwise.

In our conclusion in this respect we think we are fortified by the decision in Chicago Fire & Marine Insurance Co. v. Sharpensteen, 37 Ariz. 132, 289 P. 985, that where the agent of an insurance company fails to ask the buyer whether the certificate has been registered and neglects also to ascertain from the proper State official whether this has been done, the insurer will be deemed to have waived any requirement of such action and will be liable under the policy.

The judgment is affirmed.