## HOFSLUND et al. v. METROPOLITAN CASUALTY INS. CO. OF NEW YORK.

### No. 10260.

United States Court of Appeals. Seventh Circuit.

March 14, 1951.

Rehearing Denied April 30, 1951.

R. E. Puchner, Richard P. Tinkham, Wausau, Wis., for appellant.

Leonard F. Schmitt, August G. Eckhardt, Merrill, Wis., Elmer E. Klaprat, Wausau, Wis., Schmitt, Eckhardt & Gullickson, Merrill, Wis., of counsel, for appellees.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The principal question presented by this appeal involves the ownership of an automobile which, while being driven by Hjalmer Olson, an employee of M & J Auto Parts Company, was involved in an accident in which the plaintiff, Hofslund, was injured. The action was brought against the defendant, Metropolitan Casualty Insurance Company of New York, which was carrying a policy of garage liability insurance on M & J.

The policy under "Definition of Operations" provided as follows:

"Division 1. Automobile Dealer or Repair Shop. The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

Under "Exclusions" the policy provided: "This Policy does not apply: * * * (b) under division 1 of the Definition of Operations, to the ownership, maintenance or use for pleasure purposes of any automobile not owned by or in charge of the named insured for use principally in such operations."

The plaintiff admits that there is no liability against the defendant insurance company if, at the time of the accident, the ownership of the automobile had passed from M & J to Olson.

Raymond J. Polzer, the secretary-treasurer and manager of M & J testified that the automobile in question had been taken in trade on another automobile which M & J sold to one Lawrence Tritten. At that time Tritten endorsed the certificate of title in blank and delivered it and the automobile to M & J, which thereupon placed the automobile on their used car lot. M & J, as a dealer, was not required by Wisconsin statutes to apply for a new certificate of title.

About two weeks later Olson talked to Polzer about buying the automobile and was then told by Polzer that the price was $75.00, payable one-third down and the balance $10.00 per week. Olson agreed to these terms, after trying the car out, and on April 22, 1949, Olson finished paying the required down payment of $25.00 and was given the keys to the automobile and told that he could have the car. The keys to the automobiles owned by M & J were kept on a key board in their office. Polzer then also offered the certificate of title to Olson, but Olson asked Polzer to hold the certificate of title for the time being, because he, Olson, had no place to keep it. Polzer also consented to Olson's use of M & J license plates on April 22 so that Olson could go over to Elderon and get some old license plates of his own. After April 22, Olson

drove this automobile home nights and used it as he desired. Part of the time while he was at work he parked it on the M & J used car lot. After April 22 M & J neither had the keys to this car, used the car, nor exercised any control over it. M & J did not secure itself by taking back a mortgage or conditional sales agreement. It sold the automobile to Olson on an open account.

On May 7, when the accident happened, Olson was on a pleasure trip and was not in the course of his employment or acting as an agent for M & J.

On the date of the accident Olson owed an unpaid balance of only $6.00 on the automobile. After the accident he sold the automobile for junk to a wrecker and, at Olson's request, Polzer then delivered the blank certificate of title to the wrecker.

Olson testified to these same facts and no witness disputed them.

At the conclusion of the taking of evidence the trial court announced that the court found as a matter of law that at the time of the accident the automobile still belonged to M & J because there had been no compliance with the Wisconsin automobile registration statute which requires "that the certificate of title must be sent to the Motor Vehicle Department at Madison and a transfer made there, upon the payment of the fee." The court therefore refused to submit the question of ownership to the jury.

We think the trial court erred in so deciding as a matter of law that there had been no transfer of the ownership of this automobile. We are of the opinion that this ruling is contrary to both the applicable Wisconsin Statutes and to the decisions of the Supreme Court of Wisconsin.

Section 121.18 of the Wisconsin Statutes provides:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 121.19 provides rules for determining the intentions of the parties. Paragraph (1) of that section is as follows:

"(1) Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, * * * be postponed."

The Supreme Court of Wisconsin in Liner v. Mittelstadt, 257 Wis. 70, 42 N.W.2d 504, 508, recognized that the Uniform Sales Act, Chapter 121, Wis.Stats. is applicable to the sale of an automobile. In that case there was a contract for the sale of certain trucks. The contract fixed a definite time and place (the seller's place of business) at which the buyer should take possession of the trucks. At the time fixed the truck which was involved in an accident was out on a trip on work for the seller. There had been a bill of sale *and a transfer of the certificate of title to* the buyer but the court held that the failure of the seller to deliver the truck at the appointed place prevented the passing of the ownership of the truck to the buyer. The court there said: "It is our opinion that this conduct is stronger evidence of an intent for the seller to retain ownership at least until 11:59 P.M., than the payment of purchase price and receipt of the bill of sale and certificates of title is of intention to put immediate ownership in the buyer."

The statute to which the trial court referred as sustaining its ruling. Section 85.01(8), Wis.Stats. provides that: "(a) The rights conferred by the certificate of title specified in subsection (3) shall be transferable with the sale of the vehicle covered thereby * * *. Provided, that no such transfer shall be valid * * * unless the motor vehicle department shall have been notified in writing of such sale or transfer, such notice to be accompanied by the certificate of title properly signed by the new owner. * * * If ownership of the vehicle be transferred, the owner shall assign the certificate of title in writing at the time of sale * * *. Within 5 days

thereafter, the transferee shall present such certificate or evidence to the motor vehicle department. * * *"

Section 85.01(8) (e) provides a penalty for any person who shall "sell, buy or otherwise transfer such a vehicle" without complying with the above statute on such transfers.

█ A consideration of the Wisconsin statute on the registration of automobiles makes it seem clear that the purpose of the registration statute was to protect bona fide purchasers of automobiles from fraudulent sales and to help identify the owners of automobiles being operated on the highways. The penalty section of the statute recognized that a person could *"sell, buy or otherwise transfer"* an automobile without complying with the registration statute. It was for such sales and transfers that the penalty was to be levied.

Section 85.01 of the Wis.Stats. provides that no automobile shall be operated on any highway unless it shall have been registered. The statute provides that for a violation of this section the person operating the automobile shall be arrested and be brought before a judge or justice who shall "require such person to make application for registration and pay the fee therefor," which application shall then be forwarded by the judge or justice to the motor vehicle department. This Section then provides that the provisions shall not apply to any motor vehicle while being operated by any private person within a period of ten days from the date of *purchase* of such vehicle by such private person. This statute also seems to clearly indicate that the purchase of the automobile could be made (and the title passed) prior to compliance with the registration statute. During the ten day period of grace provided by this statute and the five day period after purchase provided by the registration statute, the actual ownership of the automobile could not be considered as hanging in mid-air between the seller and the buyer. The ownership must have passed to the buyer when the terms of the contract of sale had been complied with by the parties.

In Borkenhagen v. Baertschi, 239 Wis. 21, 300 N.W. 742, L & M Motors sold an automobile to Baertschi and agreed to procure and pay for the license for the remainder of the current year, and for that purpose retained the certificate of title until the license plates for the automobile could be applied for. A representative of the L & M Motors gave the buyer permission to use their garage license plate on the car until new license plates had been procured. The court there said, 239 Wis. at page 26, 300 N.W. at page 745: "Appellants' argument, based upon the use of the L. & M. Motors license plates on the Ford car at the time of the accident, can have no bearing on the ownership of the Ford car at the time, because it is conceded that the defendant Baertschi was the owner. Even if it were not so conceded, such use of the license plate on the Ford car would only create a presumption that Baertschi was a servant of the L. & M. Motors, to whom the license plates had been issued. Such presumption is, of course, rebuttable. (Citing authorities.)"

There, as here, there was more than sufficient evidence to rebut such a presumption, even though the certificate of title had not been delivered and the seller's license plates were being used.

In Reynolds v. Wargus, 240 Wis. 94, at page 101, 2 N.W.2d 842, 845, the trial court instructed the jury, that: "Now by the word 'owner' is meant the person who holds legal title to such a vehicle. It is the law that two persons may sell and buy an article of personal property such as an automobile, by what is known as an oral contract, and if the seller's and the buyer's minds have met upon the price and all of the essential terms of the contract of purchase, and thereafter the article is delivered by the seller and accepted unconditionally by the buyer, that contract constitutes a sale. * * *"

While the Supreme Court of Wisconsin held this to be a correct statement of the law the jury there found, and the court held, that title had not passed to the purchaser. There, however, there was evidence that the buyer had not yet agreed

to buy the car, that both parties knew that it would be necessary to obtain the consent of the finance company to the transaction, which consent had not been obtained, and the buyer had requested an opportunity to drive the car to LaCrosse to try the car out. Nor had there been an agreement as to what, if any, amount the buyer should pay over the amount of the monthly payments which the seller was making to the finance company. There also the parties did not comply with the registration law.

While there is some authority in other states to the contrary, we believe that the better reasoned opinions on this question hold that where the seller's and buyer's minds have met upon all the essential terms of the contract of sale, and thereafter the automobile is delivered by the seller and accepted unconditionally by the buyer, such a transaction constitutes a sale in which the title passes to the buyer even though there has not been a compliance with the registration law of the state.

In London Assurance v. Lufty et ux., 9 Cir., 184 F.2d 40, the Luftys, residents of Arizona, came to Chicago where they purchased and paid for a Lincoln automobile. They were given a certificate of title which they delivered to the salesman who made the sale, on his promise to have the title officially transferred to their name in the office of the Secretary of State of Illinois. The Luftys, using the license plates which they had used on their old car, then drove the Lincoln automobile back to Arizona where, about a month later, it was stolen. It was then discovered that the salesman had failed to have the title transferred to the Luftys and that in the meantime the former owner of the Lincoln had procured a duplicate certificate which he had assigned to a third party, to whom a new certificate had then been issued. The appellant insurance company which had insured the Luftys against loss of the Lincoln by theft thereupon denied liability on the theory that the Luftys never owned the automobile.

In deciding against the appellant insurance company the court said, 184 F.2d at page 42: "Appellant's insistence that title did not pass to them (the Luftys) because they failed to receive a certificate of title overlooks the distinction made in Illinois and elsewhere between actual ownership and a formal official certificate of title. When an automobile is purchased, a statute regulating the manner of transfer and recording titles to motor cars with a state official, does not operate to invalidate, as between the parties, the bona fide sale and delivery of such vehicles prior to registration. (Citing authorities.) Such is quite generally the law."

In cases where there is a conflict in the evidence as to the facts concerning the purchase of an automobile, or where different inferences as to such facts might reasonably be drawn from the evidence, the question of whether the sale has been consummated and the title has passed is a question of fact for the jury. Fawcett v. Gallery, 221 Wis. 195, 265 N.W. 667. The court there said, 221 Wis. at page 207, 265 N.W. at page 671: "From a careful examination of all the testimony bearing on the issue as to the ownership of the car, we conclude that there is a clear issue of fact for the consideration of the jury and that the jury's findings as to the fifth and eighth questions (as to ownership) of the special verdict are sustained by the evidence, * * *."

In the instant case, however, the essential facts as to the transaction are undisputed, and from those facts and the only reasonable inferences which can be drawn therefrom, it seems to us that it must be held as a matter of law that all of the essential terms of the contract of purchase in the instant case were agreed to by M & J Auto Parts Company and Olson; that delivery of the automobile was made to and accepted by Olson, and that he thereupon acquired ownership of the automobile.

It necessarily follows that there was no liability on M & J Auto Parts Company, and therefore no liability on its insurance carrier, Metropolitan Casualty Insurance Company of New York.

The decision of the District Court is reversed, with instructions to enter a judgment for the defendant, Metropolitan Casualty Insurance Company of New York.