# ARDYTH HENRY v. D. A. ODELL MOTOR CAR COMPANY AND ANOTHER.[1]

March 2, 1934.

No. 29,642.

*Cobb, Hoke, Benson, Krause & Faegre* and *Nathan A. Cobb,* for relators.

*Orr, Stark, Kidder & Freeman,* for respondent.

*DEVANEY, Chief Justice.*

*Certiorari* to the industrial commission to review a decision awarding compensation for the death of Anthony J. Henry, injured December 29, 1931, while employed by the D. A. Odell Motor Car Company of Minneapolis as an automobile salesman. Death followed on December 31, 1931. A hearing was had before a referee, who filed findings of fact and denied compensation. Respondent appealed to the industrial commission, which heard the matter and

[1]Reported in 253 N. W. 110.

filed an order awarding compensation, holding that the accident arose out of and in the course of decedent's employment with the above named employer.

The employer was a distributor of Pierce Arrow cars. It was the customary practice of the employer to furnish a car to each employe and to bear the expense of operation, insurance, and the upkeep of the same. The decedent (hereinafter referred to as Mr. Henry) at the time of his death was using a Ford coupé. He was a salesman in both the new and used car departments, having a roving commission which in the course of his employment took him almost continually upon the streets of the city of Minneapolis. The employer's salesroom was located in the downtown district. Mr. Henry lived at 4832 Twelfth avenue south. The distance between the two places was about six miles. The accident occurred between 1:15 and 1:30 p. m. at the intersection of Forty-eighth street with Park avenue. Henry's home was located on a street paralleling Park avenue, six blocks east thereof. When injured he was driving south on Park avenue and had given no indication of an intention to turn off Park avenue. Had he intended to go to his home by the most direct route, he could have turned east at Forty-eighth street and driven to a point in front of his home. Otherwise he might have proceeded to Forty-ninth street and reached his home by entering an alley from Forty-ninth street in the rear thereof.

Relators' two assignments of error present the sole question here to be decided, namely, did the accident in which Henry was injured arise "out of and in the course of his employment" as it must have done to be compensable? 1 Mason Minn. St. 1927, § 4261.

There is little dispute with respect to the facts except as they bear on the question of the precise business in which Henry was engaged at the time of the accident. It is the relators' claim that Henry was not in the course of his employment and not within the protection of the compensation act for the reason that at the time of the accident he was driving to his home for the purpose of getting a noonday lunch, a private and personal errand not connected with his employment. Further, relators contend that Henry was not within the protection of the transportation amendment to the orig-

94

inally enacted compensation act, 1 Mason Minn. St. 1927, § 4326(j), and that there should be no recovery.

The question of fact respecting the exact nature of Henry's errand at the time of the accident is present in this case because of the testimony of Mrs. Gramling, wife of employer's sales manager, to the effect that Mrs. Henry on the morning of the accident declined an invitation to lunch, stating that she could not accept because she was expecting Mr. Henry home that noon. Mr. Gramling testified to a similar admission on the part of Mrs. Henry. There was testimony as to Mr. Henry's usual lunch habits both at the office and on those occasions when he went home. There was some testimony of a telephone conversation during the noon-hour, although there is no evidence as to its nature. There was also a rather unsatisfactory attempt to show, at least by inference, that Henry was on his way to interview one Sime, who lived in the Minnchaha parkway district, a district most conveniently reached by following the route over which Henry was traveling. There was otherwise no direct testimony throwing light on the question of where Henry was going at the time of the accident.

Respondent had the burden of proving that Henry came to his death as a result of an accident arising out of and in the course of his employment. The law does not require respondent to produce direct evidence of that fact. No particular *quantum* of proof is necessary. It is sufficient if there is in the record evidence which will reasonably sustain an inference or raise a presumption in support thereof. The many cases decided by the court bearing on the kind and nature of evidence necessary in this class of cases to sustain the burden of proof indicate that the following may serve as useful guides in reaching a proper conclusion:

(1) Did the accident happen within the usual hours of employment?

(2) Did the accident occur at the usual place of employment?

(3) Did the accident occur while the employe was using a tool, a machine, or a vehicle regularly furnished by the employer to be so used by the employe?

See for instance the following cases: Mahowald v. Thompson-Starrett Co. 134 Minn. 113, 158 N. W. 913, 159 N. W. 565; State ex rel. London & L. I. Co. v. District Court, 141 Minn. 348, 170 N. W. 218; Hansen v. N. W. Fuel Co. 144 Minn. 105, 174 N. W. 726; Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261; Behr v. Soth, 170 Minn. 278, 212 N. W. 461; Moore v. J. A. McNulty Co. 171 Minn. 75, 213 N. W. 546; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678.

Applying these guides to the abstract case, and we realize that there are other sound guides, we perceive that at the time of the accident Henry was within the usual hours of his employment (1:15 to 1:30 p. m.); that he was at the usual place of his employment (the streets of the city, pursuant to his roving commission to find prospective buyers and to sell cars); and that he was at the time of the accident using the automobile furnished him by his employer (a Ford coupé to be used not as a demonstrator but to provide transportation necessary to the carrying on of the work).

There is no decision of this court directly analogous to the case at bar. Simonds v. Reigel, 165 Minn. 458, 206 N. W. 717, is patently distinguishable, while Mogle v. A. W. Scott Co. 144 Minn. 173, 174 N. W. 832, involves quite a different question (action at common law for negligence of servant). So also in the cases decided by other courts cited by relators there is no direct analogy. In the case of Wertz v. Reynolds, 77 Ind. App. 234, 133 N. E. 393, most nearly in point and coming under the compensation act of Indiana, the evidence was held sufficient to support the finding of the Indiana board that the employe's death did not arise out of and in the course of his employment. See also Sina v. Carlson, 120 Minn. 283, 139 N. W. 601. Our sole duty is to ascertain, in line with the oft repeated rule of this court, whether there is credible evidence to sustain the findings of the commission. A finding of the commission cannot be disturbed unless reasonable minds are clearly required to adopt a contrary conclusion. Furlong v. N. W. Casket Co. 190 Minn. 552, 252 N. W. 656.

We believe the facts above recited, there being no definite evidence either way as to the nature of Henry's errand at the time of the

fatal accident, are sufficient to raise a presumption that Henry was in the course of his employment at the time of the accident. These facts were not rebutted. To state it otherwise, we hold that as in the instant case, when an employe within his usual working hours is upon the streets of the city where the very nature of his work requires him to be and is operating an automobile furnished him by the employer with which to perform that work, then, in the absence of evidence as to whether the employe was there for personal reasons or whether he was there to serve his employer, there arises a presumption that he is acting in the course of his employment, which presumption sustains the burden of proof until satisfactory evidence to the contrary is produced.

See Piepho v. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Langworthy v. Owens, 116 Minn. 342, 133 N. W. 866; Adams v. Nathanson, 161 Minn. 433, 201 N. W. 927; Behrens v. Hawkeye Oil Co. 151 Minn. 478, 187 N. W. 605. See also Free Press Co. v. Bellig, 183 Minn. 286, 288, 236 N. W. 306, where the court says:

"Our rule is that proof of ownership makes a prima facie case of authorized use. * * * The collision occurred about 12:30 in the afternoon. It was customary for the driver to make deliveries at places of business and at trains, commencing at 11:30 in the morning. Usually it took until one o'clock, and then the driver went home for dinner in the truck and went back to his work when through. He was within the scope of his employment."

See Lausche v. Denison-Harding Chevrolet Co. 185 Minn. 635, 643, 243 N. W. 52, 55, wherein the court says:

"Proof of ownership and that the operator is an employe of the owner of an automobile driven on a public street or highway * * * is held to justify an inference that the car was being operated and used by authority and in the business or for the purposes of the owner."

Where, as in this case, there is credible evidence establishing the facts above recited, not rebutted, and the commission finds that the accident occurred in the course of employment, we will not disturb that finding.

We are not concerned with the process of reasoning by which the commission reached its conclusion provided it is a proper one. Under the view here taken, it is unnecessary to consider the question whether the case falls within 1 Mason Minn. St. 1927, § 4326(j), and therefore whether, granting relators' contention that Henry was on his way home to lunch, he was still within the protection of the act.

Affirmed.