CONTINENTAL CASUALTY COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*January 8—February 2, 1965.*

472

For the appellants there was a brief by *Kracht & Zauner* of Milwaukee, and oral argument by *Edward J. Kracht*.

For the respondent Industrial Commission the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general, concurred in by *Ray T. McCann* and *Richard A. McDermott,* both of Milwaukee, for the respondent Rosemarie Gold Hirshey.

HALLOWS, J. The findings of the Industrial Commission are somewhat skimpy, but the testimony shows that on the trip some calls were to be made on distributors and in fact a call was made on distributor Vernon Mansch at Slayton, Minnesota. At the time Mansch was indebted to Lincoln Sales Corporation in the sum of $8,000 and was interested in another outlet in Iowa. By prearrangement Mansch had made the hunting arrangements at the request of the sales manager and went on the hunting trip with them. There was testimony that Leonard Oster, who owned 50 percent of the stock of the company and was its president and a cousin of the Gold brothers, knew of the contemplated trip

and of Richard Gold's coming from the east coast to partake in the hunting and the discussions. These talks concerned the sales manager's purchasing either the stock of the brothers or one half of the assets of the corporation.

We think the evidence supports the conclusion of law that William R. Gold was an employee of Lincoln Sales Corporation. An employee is any person in the service of another under any contract of hire, express or implied, sec. 102.07, Stats. A corporate officer and director may be an employee of a corporation if such officer performs work customarily performed by an employee. *Fruit Boat Market v. Industrial Comm.* (1953), 264 Wis. 304, 58 N. W. (2d) 689; *Zurich General Accident & Liability Ins. Co. v. Industrial Comm.* (1927), 193 Wis. 32, 213 N. W. 630; *Columbia Casualty Co. v. Industrial Comm.* (1929), 200 Wis. 8, 227 N. W. 292; *Milwaukee Toy Co. v. Industrial Comm.* (1931), 203 Wis. 493, 234 N. W. 748. In addition to his services as an attorney and officer, the deceased was involved in the day-to-day operations of the business for which he was paid as an employee and which were of a kind customarily performed as an employee.

The second question, of whether there is credible evidence to support the conclusion that at the time of the accident the deceased was performing services incidental to his employment and that the injury arose out of his employment, is a matter upon which this court is divided. The majority of the court, which does not include the author of this opinion, believes the evidence and the inferences which may reasonably be drawn therefrom by the Industrial Commission as the trier of the facts support its ultimate conclusion that at the time of the accident the deceased was performing service incidental to his employment. This view rests on the basis that the trip was predominately for business because it had as its purposes the calling on distributors and entertaining Mansch, the familiarizing of the deceased with day-to-day

operations of the company, and the discussion of the possible purchase by the sales manager of a one-half interest in the business either through the purchase of assets or of the shares of capital stock of the Gold brothers. As a reasonable inference the hunting of pheasants for three days was incidental to these purposes and since they were approved by the Gold brothers and known to the president they constituted valid business purposes within the meaning of sec. 102.03 (1) (c), Stats., requiring at the time of the accident that the employee be performing a service growing out of and incidental to his employment. Under this view the hunting was in the nature of entertaining customers—when play is work and work is play. It has been held when an employer authorizes or directs an employee to entertain customers as a part of sales promotion, the employee is considered in the course of employment when injured during a hunting or fishing trip with the customers. See *Ohlsen v. J. G. Dill Co.* (1946), 222 Minn. 10, 23 N. W. (2d) 15, 19; *Linderman v. Cownie Furs* (1944), 234 Iowa 708, 13 N. W. (2d) 677; *Lewis v. Lowe & Campbell Athletic Goods Co.* (Mo. App. 1952), 247 S. W. (2d) 800; *Boyd v. Florida Mattress Factory, Inc.* (Fla. 1961), 128 So. (2d) 881; 7 Schneider, Workmen's Compensation Text, p. 291, sec. 1666.

The minority of the court, including this writer, views the facts as presenting a two-purpose trip; one, for limited business purposes and the other, a personal-pleasure trip to hunt pheasants and to talk over the possible sale of their personal shares of stock. Consequently, the rule affirmed in *James v. Industrial Comm.* (1962), 18 Wis. (2d) 239, 242, 118 N. W. (2d) 185, would be applicable, wherein it was stated:

". . . in order to establish the liability of the employer in traveling cases by employees outside of the place of employment, the service of the employer must be a concurrent cause of the trip which would have been made although the personal motive had been canceled. It was pointed out in that case:

[*Matter of Marks v. Gray* (1929), 251 N. Y. 90, 167 N. E. 181]

"'If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk.'"

This rule was first adopted in *Barragar v. Industrial Comm.* (1931), 205 Wis. 550, 238 N. W. 368; and subsequently approved in *Bohnsack v. Huson-Ziegler Co., Inc.* (1933), 212 Wis. 65, 248 N. W. 764; *Fawcett v. Gallery* (1936), 221 Wis. 195, 265 N. W. 667; and *Hills Dry Goods Co. v. Industrial Comm.* (1936), 222 Wis. 439, 267 N. W. 905. The minority also disagrees with the proposition that officers in control of the corporation can by their *ipse dixit* endow their personal-pleasure trip with attributes and purposes of a business trip and insure themselves of the benefits of workmen's compensation. The rationale in *Duvick v. Industrial Comm.* (1963), 22 Wis. (2d) 155, 125 N. W. (2d) 356, and *Leigh Aitchison, Inc., v. Industrial Comm.* (1925), 188 Wis. 218, 205 N. W. 806, would dictate the contrary.

Since no corporate action authorized the Golds to represent the corporation in any deal with the sales manager for the sale of assets and the record does not show they attempted to speak for the corporation but rather only for themselves, the court found this purpose to be personal and no permissible inference could be drawn that the discussions or negotiations with the sales manager involved corporate interests. In the minority's opinion this would only require the case to be sent back to the Industrial Commission for further findings under the rule laid down in the *James Case.* However, the majority for the reasons stated would affirm.

*By the Court.*—Judgment affirmed.