Holly Lynn WEISS, Plaintiff-Appellant-Petitioner,

v.

CITY OF MILWAUKEE and Yvette Marchan, Defendants-
Respondents.

Supreme Court

*No. 94–0171. Oral argument January 8, 1997.—Decided
March 4, 1997.*

(Also reported in 559 N.W.2d 588.)

For the plaintiff-appellant-petitioner there was a brief by *Robert J. Baratki* and *Law Offices of Robert J. Baratki*, Racine and oral argument by *Robert J. Baratki*.

For the defendants-respondents the cause was argued by *Susan E. Lappen*, assistant city attorney, with whom on the brief was *Grant F. Langley*, city attorney.

¶ 1. ANN WALSH BRADLEY, J. Holly Lynn Weiss seeks review of an unpublished court of appeals decision which affirmed a summary judgment dismissal of her complaint against the defendants, the City of Milwaukee and its employee, Yvette Marchan (together, "the City").[1] Weiss argues that the court of appeals erred in determining that the Worker's Compensation Act (WCA) provides the exclusive remedy for her claim of emotional distress resulting from the City's disclosure of her home address and telephone number to her abusive former spouse. Because we conclude that Weiss has alleged injuries covered by the Worker's Compensation Act, and that the exclusive remedy provision of the WCA precludes her common law action against the defendants for negligent infliction of emotional distress, we affirm the decision of the court of appeals.

¶ 2. The relevant facts are not in dispute. On July 31, 1990, Weiss obtained a temporary restraining order against her abusive husband, Osama Abughanim. Shortly thereafter, she commenced a

---

[1] *See Weiss v. City of Milwaukee*, No. 94–0171, unpublished slip op. (Wis. Ct. App. Oct. 24, 1995), affirming the grant of summary judgment by the Circuit Court for Milwaukee County, Michael J. Skwierawski, Judge.

divorce action. Abughanim, forced to vacate the marital residence, began a campaign of harassing telephone calls and personal visits during which he would threaten the lives of Weiss and their two children. In October 1990, Weiss vacated the residence and moved in with her parents in order to escape her husband's harassment. Abughanim persisted in making threatening telephone calls, both to Weiss's parents' residence and to her place of employment. The calls to Weiss's employer were of such frequency that they resulted in her termination in December 1990.

¶ 3. In February 1991, Weiss obtained employment with the City of Milwaukee as an engineering technician. As an employee, she was required to establish residence in Milwaukee within one month of hiring. She therefore moved from her parents' residence in Waukesha County to an apartment located in Milwaukee. At that time, Abughanim did not know Weiss's Milwaukee address or telephone number.

¶ 4. Weiss was instructed by her supervisor to provide her address and telephone number to the City's payroll department. She contacted the payroll department, explained that she had an abusive former husband, and expressed her desire that her residential information remain confidential. A City payroll clerk assured Weiss that the City had a policy prohibiting the disclosure of such employee information to private individuals. Relying on the clerk's assurance, Weiss provided her address and telephone number to the payroll department.

¶ 5. On July 10, 1991, Abughanim contacted the City's Department of Employee Relations and spoke with Sheila Bowle, an employee of the department. Abughanim falsely represented to Bowle that he was calling on behalf of a bank and needed to confirm

Weiss's address and telephone number for credit purposes. Bowle relayed the bogus inquiry to her supervisor, Yvette Marchan, who, without attempting to verify Abughanim's claimed credentials, authorized Bowle to disclose Weiss's residential information.

¶ 6. By this ruse, Abughanim obtained Weiss's home address and telephone number. Thereafter, Abughanim regularly telephoned Weiss at work to inform her that he now knew her home address and telephone number, and that he would kill her and their two children. Her awareness that Abughanim knew her address, and her then existing financial inability to change her residence, caused Weiss severe emotional distress arising from fear for her safety and that of their two children.

¶ 7. Weiss commenced a common law action in the circuit court against the City to recover damages for negligent infliction of emotional distress arising from the City's unwitting disclosure to Abughanim. The City filed a motion for summary judgment, asserting that the WCA[2] covered Weiss's injuries, and the statute's exclusive remedy provision therefore barred Weiss's suit. The City also maintained that it had no duty to keep confidential Weiss's home address and telephone number, because such information was available to the public pursuant to Wisconsin's open records law.[3]

¶ 8. The circuit court granted the City's motion for summary judgment, dismissing Weiss's complaint. The court reasoned that the City had no duty to maintain the confidentiality of Weiss's home address and telephone number, since the open records law would

---

[2] Wis. Stat. §§ 102.01-.89 (1991–92). Unless otherwise indicated, all future statutory references are to the 1991–92 volume.

[3] Wis. Stat. §§ 19.31-.39.

have .required disclosure had Abughanim filed a request for the information. In addition, the court determined that the damages sought by Weiss were so difficult to ascertain that they were precluded on public policy grounds. The circuit court expressly declined to base its order on provisions of the WCA. Weiss appealed.

¶ 9. The court of appeals affirmed, on different grounds, the circuit court's grant of summary judgment. Concluding that Weiss stated a claim under the WCA, the court of appeals determined that her common law negligence action against the City was barred by the statute's exclusive remedy provision, Wis. Stat. § 102.03(2). The court did not squarely address the open records law issue, but did "detect grave faults in the trial court's application" of the statute. *Weiss v. City of Milwaukee*, No. 94–0171, unpublished op. at 9 (Wis. Ct. App. Oct. 24, 1995). Weiss petitioned this court for review.

¶ 10. This court reviews a grant of summary judgment using the same methodology as the circuit court. *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). If there are no material facts in dispute, as here, we must determine whether the movant is entitled to judgment as a matter of law. *Id.* The question in this case is whether Weiss's common law negligence claim must be dismissed, as a matter of law, because it is precluded by the exclusive remedy provision of the WCA. Our task is to interpret the provisions of Chapter 102 of the Wisconsin Statutes.[4] A question of law is therefore presented, which we review *de novo*, without deference

---

[4] For purposes of summary judgment, the parties have conceded that there are no genuine issues of material fact.

to the decisions of the circuit court and court of appeals. *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 262, 468 N.W.2d 1 (1991).

¶ 11. We have repeatedly stated that the provisions of Chapter 102 must be liberally construed to effectuate the WCA's goal of compensating injured workers. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 288, 548 N.W.2d 57 (1996); *Nigbor v. DILHR*, 120 Wis. 2d 375, 382, 355 N.W.2d 532 (1984); *Cruz v. DILHR*, 81 Wis. 2d 442, 450, 260 N.W.2d 692 (1978). However, courts must also exercise care to avoid upsetting the balance of interests achieved by the WCA. *County of La Crosse v. WERC*, 182 Wis. 2d 15, 30, 513 N.W.2d 579 (1994).

¶ 12. Generally, an employer's obligation to pay worker's compensation accrues under Chapter 102 when all of the following conditions are present: 1) the employee sustains an injury; 2) at the time of the injury, both the employer and the employee are subject to the provisions of the WCA; 3) at the time of the injury, the employee is performing service growing out of and incidental to his or her employment; 4) the injury is not intentionally self-inflicted; and 5) the accident or disease causing injury arises out of the employment. Wis. Stat. §§ 102.03(1)(a)–(e). For purposes of our review of summary judgment in this case, our inquiry is limited to determining whether, at the time of her injury, Weiss was performing service growing out of and incidental to her employment, and whether the accident causing injury arose out of her employment.[5]

---

[5] Weiss argues upon review that the open records law did not require or authorize the City to release her residential information, and that the damages she seeks for emotional distress are not so difficult to ascertain as to be precluded on public

¶ 13. It is well settled that when the § 102.03(1) conditions of liability for worker's compensation are satisfied, the exclusive remedy provision, § 102.03(2),[6] precludes an injured employee from maintaining a negligence action against his or her employer and fellow employees. *See, e.g., County of La Crosse*, 182 Wis. 2d at 32 (exclusive remedy provision "was designed to supplant actions in tort by injured employes against their employers"); *Jenson*, 161 Wis. 2d at 263 (plaintiff's "common law action is barred by the exclusivity provisions if she in all other respects is entitled to recovery under the Act").[7] Thus, Weiss's common law action against the City is barred if her alleged injuries are covered by Chapter 102.

¶ 14. The City asserts that Weiss meets each of the five criteria set out in §§ 102.03(1)(a)–(e), and that the remedy for her injuries is therefore solely that

---

policy grounds. Because our resolution of the WCA issue is dispositive in this case, we do not consider Weiss's additional arguments.

[6] Section 102.03(2) provides:

(2) Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier. . . .

[7] *See also Coleman v. American Universal Ins. Co.*, 86 Wis. 2d 615, 621, 273 N.W.2d 220 (1979); *Crawford v. Dickman*, 72 Wis. 2d 151, 152, 240 N.W.2d 165 (1976); *Rosencrans v. Wisconsin Telephone Co.*, 54 Wis. 2d 124, 127, 194 N.W.2d 643 (1972); *Grede Foundries, Inc. v. Price Erecting Co.*, 38 Wis. 2d 502, 505, 157 N.W.2d 559 (1968); *A.O. Smith Corp. v. Associated Sales & Bag Co.*, 16 Wis. 2d 145, 149, 113 N.W.2d 562 (1962); *Guse v. A.O. Smith Corp.*, 260 Wis. 403, 408, 51 N.W.2d 24 (1952); *Borgnis v. Falk Co.*, 147 Wis. 327, 337, 133 N.W. 209 (1911).

which is provided under the WCA.[8] In attempting to establish that her injury is not covered by Chapter 102, Weiss contends that at the time she was injured, she was not performing service growing out of and incidental to her employment. She also argues that the court of appeals erred when it determined that "the incident causing the injury arose out of Weiss's employment." *Weiss*, op. at 6–7.

¶ 15. We deal first with Weiss's claim that her injury is not encompassed within the WCA because at the time of the injury, she was not "performing service growing out of and incidental to. . .her employment," as required by § 102.03(1)(c). In essence, Weiss's argument is that an employee cannot satisfy § 102.03(1)(c) when receiving a personal telephone call at work. We disagree.

██

¶ 16. The statutory clause "performing service growing out of and incidental to his or her employment" is used interchangeably with the phrase "course of employment." John D. Neal and Joseph Danas, Jr., *Worker's Compensation Handbook*, § 3.7 (1996); Arthur Larson and Lex K. Larson, 1 *The Law of Workmen's Compensation* § 6.10 (1996) (hereinafter *The Law of Workmen's Compensation*). Both phrases refer to the

---

[8] The legal positions of the employer and employee in this instance are the reverse of those found in many worker's compensation cases. Often it is the employer who resists coverage under the WCA, and the employee who desires such coverage. As Weiss candidly admits, she has filed a common law action because she feels that a recovery under the WCA would be inadequate compared to a jury award on her tort claim. Conversely, the City invokes the WCA in this instance in order to limit Weiss's potential recovery for its allegedly wrongful disclosure of her residential information.

"time, place, and circumstances" under which the injury occurred. *Goranson v. DILHR*, 94 Wis. 2d 537, 549, 289 N.W.2d 270 (1980).[9]

> An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto.

1 *The Law of Workmen's Compensation* § 14.00.

■■■■

¶ 17. There is no dispute that Weiss's alleged injury occurred within the time and place of her employment. The question is whether receiving a personal phone call at work constitutes a "circumstance" of employment. We conclude that it does. Under the liberal construction given to Chapter 102, an employee acts within the course of employment when he or she is otherwise within the time and space limits of employment, and briefly turns away from his or her work to tend to matters "necessary or convenient to his [or her] own personal health or comfort." *American Motors Corp. v. Industrial Comm.*, 1 Wis. 2d 261, 265, 83

---

[9] The *Goranson* court stated that "course of employment" refers to the "time, place, and circumstances of the *accident.*" *Goranson v. DILHR*, 94 Wis. 2d 537, 549, 289 N.W.2d 270 (1980) (emphasis added). This statement is correct only to the extent that the accident and the injury occur contemporaneously. In the present case, the accident occurred when the City disclosed Weiss's residential information to Abughanim, and the injury occurred later when Abughanim called to inform her that he had acquired the information. Because § 102.03(1)(c) involves the timing of the *injury*, the phrase "course of employment" is properly understood to refer to the time, place, and circumstances of the injury.

N.W.2d 714 (1957) (citations omitted). The personal comfort doctrine does not apply, and an employee is not within the course of employment, if the "extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or. . .the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." *Id.* Applying the doctrine to the facts of this case, we conclude that regardless of the contents of a brief personal telephone call, the act of taking such a call at work constitutes a momentary departure from work duties to attend to a matter of personal comfort. Thus, when Weiss answered the personal telephone call from Abughanim, she was engaged in an activity incidental to employment, and was therefore within the course of employment.

¶ 18. Weiss next contends that the accident causing her injury did not arise out of her employment. § 102.03(1)(e). Citing *Goranson* and cases from other jurisdictions, Weiss asserts that where, as here, an employee is injured at work by a non-employee for purely personal reasons, the injury is noncompensable under the WCA.

¶ 19. We agree with Weiss that *Goranson* stands for the proposition that injuries sustained in an assault occurring in the course of employment are generally noncompensable under the WCA when the assailant is motivated purely by personal animus, and the employment in no way contributes to the incident. We also agree that Weiss's employment did not create the initial threat posed to her by Abughanim. We nevertheless conclude that the accident did arise out of Weiss's employment with the City, because the conditions of Weiss's employment facilitated her eventual injury.

¶ 20. The "arising out of" language of § 102.03(1)(e) refers to the causal origin of an employee's injury. *Goranson*, 94 Wis. 2d at 549. However, "arising out of his or her employment" is not synonymous with the phrase "caused by the employment." *Id.* at 555. In interpreting § 102.03(1)(e), we have adopted the "positional risk" doctrine:

> [A]ccidents arise out of employment if the conditions or obligations of the employment create a zone of special danger out of which the accident causing the injury arose. Stated another way, an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of special danger.

*Id.* at 555. However, when the origin of the assault is purely private and personal, and the employment in no way contributes to the incident, the positional risk doctrine does not apply. *Id.* at 556–57; 1 *The Law of Workmen's Compensation* § 11.21(c).

¶ 21. For example, in *Goranson*, a charter bus driver was injured after he drove a group of people to Green Bay. Upon arriving in Green Bay, the driver checked into a hotel along with his passengers. Later in the evening, he leaped from his third floor hotel room onto the roof of another section of the hotel two floors below, sustaining a broken hip and other injuries. There was evidence that the driver had been drinking throughout the evening with a woman, and that he had quarreled in his hotel room with the woman just prior to jumping from the hotel window.

¶ 22. This court upheld a denial of worker's compensation benefits. While there was no dispute that the

driver was in the course of employment at the time of injury, the court determined that the accident did not arise out of the driver's employment, because the injuring force was purely personal to him. *Goranson*, 94 Wis. 2d at 557.

¶ 23. The facts of this case are distinguishable from those in *Goranson*. In *Goranson*, the bus driver's employment did not contribute to or facilitate the accident causing the injury he suffered jumping from the hotel window. In this case, however, Weiss was required to provide her residential address and telephone number to the City as a condition of employment. If Weiss had never been required to provide the information to the City, the accident would not have occurred. The City's unwitting disclosure of that information to a private individual, Weiss's abusive former husband, was an accident that led to her injury. Because a condition of her employment facilitated the accident which caused her injury, we conclude that the accident arose out of her employment. *See* 1 *The Law of Workmen's Compensation* § 11.21(c) (privately motivated assaults generally do not arise out of employment, except where the employment facilitates the assault).

¶ 24. Weiss cites several cases from foreign jurisdictions for the proposition that when purely private animosity manifests itself in a workplace attack, the employment connection to the injury is so minimal that worker's compensation should be denied. *Monahan v. United States Check Book Co.*, 540 N.W.2d 380 (Neb. App. 1995); *Ross v. Mark's, Inc.*, 463 S.E.2d 302 (N.C. App. 1995). In both *Monahan* and *Ross*, a non-employee attacked and killed an ex-spouse at the ex-spouse's place of employment. Worker's compensation was denied in both cases, on the ground that assaults

do not arise out of employment when they involve private quarrels imported into the workplace. In neither case did the court find evidence that the employment contributed to or facilitated the attacks.

¶ 25. We find unpersuasive the examples of worker's compensation denials cited by Weiss. Consistent with *Goranson*, we are of the view that in certain situations, "an injury from an admittedly private source should be compensable because it [is] facilitated or contributed to by the employment environment." 1 *The Law of Workmen's Compensation* § 11.23. For example, in *Carter v. Penney Tire & Recapping Co.*, 200 S.E.2d 64 (S.C. 1973), the claimant had previously quarreled with Crosby, a non-employee. On the date of the assault, Crosby threatened the claimant while the latter was engaged in repairing his employer's roof. Before returning to the roof, the claimant reported the threats to his employer, who responded that the claimant would be protected and should proceed with his work. Crosby later returned and shot the claimant, inflicting grievous injuries. The South Carolina Supreme Court determined that the claimant's injuries arose out of his employment, because:

> the employee was required to perform his duties under circumstances where he was endangered by a peril from a source outside of and unrelated to his actual work, which peril was known to the employer and against which the employer afforded no protection or relief.

*Id.* at 67.

¶ 26. Similarly, in *Raybol v. Louisiana State University*, 520 So. 2d 724 (La. 1988), *superseded by statute as stated in Guillory v. Interstate Gas Station*, 653 So. 2d 1152 (La. 1995), the Supreme Court of Loui-

siana awarded worker's compensation to a dormitory worker who was assaulted at work by her estranged former boyfriend. The court concluded that the worker's injuries arose out of her employment, based in part on its determination that "the employer's custodial workers contributed to the danger of the assault by informing the assailant of the plaintiff's work location in the building and by assisting him in gaining access to her by unlocking a door to the dormitory." *Id.* at 727.

¶ 27. In *California Compensation & Fire Co. v. Worker's Compensation Appeals Bd.*, 436 P.2d 67 (Cal. 1968), a worker at a table pad manufacturer was shot and killed by her ex-husband. The worker's employment required her to visit the homes of customers in order to measure the dimensions of tables. Upon learning that the worker intended to remarry, her ex-husband rented an apartment, ordered a table pad, and requested that someone be sent to measure the table. When his ex-wife arrived at the apartment, he murdered her and then committed suicide. The supreme court of California affirmed an award of death benefits in part on the grounds that the husband's elaborate plot was facilitated by the conditions of the worker's employment. *Id.* at 69.

¶ 28. Finally, in *Epperson v. Industrial Commission*, 549 P.2d 247 (Ariz. App. 1976), the claimant informed a security guard at her place of employment that she was having personal difficulties with her husband and did not wish to speak to him. Her husband later appeared at the building, observed the claimant, and proceeded unimpeded past the security guard's desk to confront the plaintiff. During the course of his ensuing conversation with the claimant, the husband shot her. The Arizona court of appeals concluded that the assault did not arise out of the course of her

employment. However, it intimated that a different result would have been reached had the claimant informed the security guard of her fears and the dangers posed by her husband in a manner sufficient to justify reliance on the guard's protection. *Id.* at 250.

¶ 29. None of the cited cases is on all fours with the one presently before us. However, each stands for the proposition that when an attack occurs during the course of employment and arises from personal animus imported from a private relationship, the incident arises out of the claimant's employment if employment conditions have contributed to or facilitated the attack. Weiss was required to provide her residential information to the City as a condition of employment. That condition of employment facilitated the City's subsequent accidental release of the information to a private individual, Weiss's abusive former spouse. The disclosure of the residential information in turn enabled Abughanim to threaten Weiss. We therefore conclude that the accident causing Weiss's injury arose out of her employment with the City.

■■■

¶ 30. In summary, Weiss has alleged an emotional injury which occurred in the course of employment and was caused by an accident arising out of that employment. Accordingly, we conclude that Weiss's complaint states a claim covered under § 102.03(1) of the WCA. Because the exclusive remedy provision of the WCA, § 102.03(2), bars Weiss's common law tort action against the City, the circuit court properly granted summary judgment dismissing the complaint, and the court of appeals correctly upheld the circuit court's decision.

*By the Court.*—The decision of the court of appeals is affirmed.

JANINE P. GESKE, J. did not participate.