298 F.Supp.2d 806 (2003)
James L. BECHEN, Plaintiff,
v.
AMERICAN GUARANTY AND LIABILITY INSURANCE COMPANY, Aetna Life Insurance Company, Aetna U.S. Healthcare, and Zurich American Insurance Company, Defendants.
No. 02-C-562-C.
United States District Court, W.D. Wisconsin.
May 5, 2003.
Jay A. Urban, Milwaukee, WI, for Plaintiff.
*807 Thomas R. Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for Defendants.

OPINION AND ORDER
CRABB, District Judge.
This is an insurance coverage dispute arising from injuries sustained by plaintiff James Bechen while on a bear hunting expedition in Idaho in June 2001. Plaintiff filed this lawsuit in state court to recover damages for injuries he sustained while he was a passenger on a motorcycle that crashed, killing the driver. One of the named defendants in that suit was Aetna Life Insurance Company, which removed this case from state court on the ground that plaintiff's claims against it for payment of his medical expenses fell within the scope of the exclusive civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Also, defendant Aetna filed a cross claim against American Guaranty and Liability Insurance Company, which it thought had issued a policy of worker's compensation insurance to plaintiff's employer. (The parties learned subsequently that the policy was issued by Zurich American Insurance Company, which is part of the same group of insurance companies as American Guaranty.) In its cross claim, Aetna alleges that American Guaranty, a/k/a Zurich, has commenced an action in the Circuit Court for Milwaukee County seeking reimbursement from Aetna for amounts Zurich has paid out under its worker's compensation policy for plaintiff's medical expenses. Aetna seeks a declaration from this court that its plan does not provide coverage for plaintiff's injuries and therefore, Zurich is not entitled to reimbursement from Aetna for payment of plaintiff's medical expenses.
Pursuant to a stipulation by the parties, this court agreed to remand most of this case to state court, retaining only the issue of determining whether Aetna is responsible for the payment of plaintiff's medical expenses. Now Aetna has moved for summary judgment, contending that plaintiff was entertaining customers for his employer's benefit at the time of the accident, making his injuries compensable under Wisconsin's worker's compensation law and excluded from coverage under Aetna's policy. Zurich denies that plaintiff's injuries are covered by worker's compensation. It contends that plaintiff's activities during the trip, particularly on the date of the accident, amounted to a personal frolic unrelated to his employment.
I conclude that the undisputed facts establish that plaintiff was entertaining customers at the time of the accident. Therefore, Aetna is not responsible for payment of plaintiff's medical expenses, including those that Zurich may have paid.
One other matter remains. In March 2003, plaintiff filed a motion for injunctive relief, seeking an order directing either defendants Aetna and Zurich or both to pay his Montana hospital bill while this case is pending. That motion will be denied. Aetna has no liability to plaintiff; Zurich has no liability in the absence of a worker's compensation claim.
For the purposes of deciding Aetna's motion for summary judgment, I find from the parties' proposed findings of fact and the record that there is no genuine dispute with respect to the following facts.

FACTS
Plaintiff James L. Bechen is an adult resident of Wisconsin. At all times relevant to this action, plaintiff was employed as a branch manager by Glendale Plumbing Supply. Builders Plumbing and Heating Supply Company was Glendale Plumbing's parent company. Defendant Aetna Life Insurance Company underwrote a *808 health benefit plan sponsored by Builders Plumbing and Heating Supply pursuant to ERISA. Defendant Zurich American Life Insurance Company issued a policy of worker's compensation insurance to Builders Plumbing and Heating Supply Company.
As branch manager, plaintiff oversaw complete branch operations, from purchasing to payables. He was responsible for daily billings, dealing with manufacturers and their representatives, and handling discrepancies in billing. He was expected to entertain existing and potential clients as a means of developing business and he often did so.
Plaintiff has taken clients golfing, fishing, hunting and on tours of plants around the country. He organized his own trips and decided which of his customers he would invite to accompany him. When making that decision, plaintiff considered the volume of the customer's purchases from Glendale Plumbing, whether there was additional business that might be derived from a customer and Glendale Plumbing's interest in maintaining its relationship with that customer. In addition, he considered whether the customer might have a personal interest in the activity he had planned. After a trip, plaintiff's employer would reimburse him for his expenses. Plaintiff's employer did not require him to obtain permission from the home office before taking customers on a trip unless it involved large expenditures.
In June 2001, plaintiff organized a trip to Idaho for bear hunting and fishing. Plaintiff had taken the same trip with customers the year before and wanted to book with the same outfitter. The outfitter required at least four people per party. Plaintiff invited Don Breunig, Raymond Hughes, Jr., Breunig's son Terry and Terry's friend. Hughes was the owner of Hughes Plumbing and Breunig was the manager of Prairie Plumbing and Heating. Breunig and Hughes were good customers of Glendale Plumbing. Neither Terry Breuning nor Terry's friend was employed by Prairie Plumbing or was a customer of Glendale Plumbing.
Plaintiff and Hughes met through their respective businesses in 1988 and had developed a social relationship in addition to their business relationship. They both enjoyed golfing, hunting and fishing and often participated together in recreational and social activities away from the business setting. On these occasions, each would pay his own way. Plaintiff had also participated in a few social events with Breunig, although their relationship was more business than social.
The group traveled to Idaho in plaintiff's personal motor home. Plaintiff did not take any deduction for his motor home as a business expense or claim a deduction for "wear and tear" from the trip. Each individual was responsible for his own outfitting fees in the amount of approximately $1,400 per person, which covered accommodations, food, gear and transportation to and from the hunting areas. Plaintiff furnished food, drink and gas for the trip to Idaho and back, although the others contributed food and chipped in for gas. Plaintiff also paid for the cost of a one-night campground stay en route to Idaho. Plaintiff did not get prior approval from the home office for the trip and is not sure whether his employer knew about the trip in advance. Plaintiff intended to submit his receipts to his employer for reimbursement upon his return.
During the trip, plaintiff discussed a number of business topics that he thought would help Breunig's and Hughes's companies. These conversations were general business-related conversations typical of those he had with Breunig and Hughes on *809 a regular basis, both in and out of the office.
On June 7, 2001, Hughes and plaintiff went fishing without the others. They rode Hughes's personal motorcycle, which had been towed behind the motor home. While fishing, they did not talk about any business and they fished separately from one another. When they finished fishing, they started back to the motor home on Hughes's motorcycle; on the way, Hughes realized he had forgotten his tackle box and turned back to retrieve it. On the way back, the motorcycle crashed. Hughes was killed and plaintiff was severely injured.
Aetna's health insurance policy provides coverage for non-occupational accidental injuries or diseases. The policy defines a non-occupational accidental injury as "an accidental bodily injury that does not: arise out of (or in the course of) any work for pay or profit; or result in any way from an injury which does." The policy also contains an exclusion for services and supplies "furnished, paid for, or for which benefits are provided or required under any law of a government."
Defendant Zurich administered the worker's compensation coverage for Glendale Plumbing and initially paid plaintiff's medical bills. Plaintiff's counsel then advised Zurich that plaintiff was not filing a worker's compensation claim and asked that claims for medical payment be directed to Aetna. Aetna denied payment of the medical expenses. In response to the letter from plaintiff's lawyer, Zurich stopped payment and now seeks reimbursement from Aetna in a civil action that is pending in the Circuit Court for Milwaukee County.

OPINION
Before addressing the merits of Aetna's motion, it is necessary to backfill some holes left open by the parties. Neither party has discussed what law should apply to the determination of insurance coverage. Neither has said, for example, whether state law applies or, because the case is here pursuant to a federal statute, it is federal common law that should govern the interpretation of Aetna's policy language. It is not surprising that Zurich does not discuss this question. Its only interest in this federal case is whether plaintiff is covered by worker's compensation and that determination is a state law question. It is surprising, however, that Aetna has said nothing on the subject. Not only has it failed to discuss the applicable law; it has said nothing about how it believes this court should read its occupational and government benefits exclusions, which are the only plan provisions it has mentioned in its papers. It and Zurich seem to have decided that the only question is whether Wisconsin's worker's compensation law would cover plaintiff's medical expenses; if that question is answered "yes," then Aetna is off the hook.
But there must be some link to Aetna's plan; after all, the plan is the basis for Aetna's removal of the case. In the face of Aetna's silence regarding its plan language, I infer that Aetna is conceding that if the court determines under state law that plaintiff was not acting within the course of his employment when he was injured, this finding would satisfy the plan's requirements that his injuries be "non-occupational" and not compensable under the law of a state government and therefore the plan would cover plaintiff's injuries. However, I draw this inference for the purposes of this case only, for Aetna has said nothing to suggest that it wants this court to construe its plan for the future benefit of administrators and participants. It is on the basis of this limited construction of this case that I *810 have proceeded to address Aetna's motion as the parties have framed it, deciding only whether, under Wisconsin law, plaintiff was "performing a service growing out of and incidental to his employment" at the time of his accident.
The Wisconsin's Worker's Compensation Act covers an employee's injuries if he was "performing a service growing out of and incidental to his employment" at the time of his accident. Wis. Stat. § 102.03(1)(c). The phrase is interchangeable with the phrase "course of employment" and refers to the "time, place, and circumstances under which the injury occurred." Ide v. Labor and Industry Review Comm'n, 224 Wis.2d 159, 169, 589 N.W.2d 363, 368 (1999) (citing Weiss v. City of Milwaukee, 208 Wis.2d 95, 104, 559 N.W.2d 588 (1997)). "An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto." Weiss, 208 Wis.2d at 105, 559 N.W.2d 588 (quoting 1 Arthur Larson and Lex K. Larson, The Law of Workmen's Compensation § 14.00 (1996)). See also Employers Mut. Liab. Ins. Co. v. DILHR, 52 Wis.2d 515, 521, 190 N.W.2d 907, 911 (1971) (phrase "growing out of and incidental to employment" includes "activity that is reasonably required by the terms and conditions" of the employment).
Courts have held that when an employer authorizes or directs an employee to entertain actual or potential customers as part of his job duties, worker's compensation is due the employee for injuries he sustains while engaged in recreational activities with those customers pursuant to his employer's directive. See, e.g., Ohlsen v. J.G. Dill Co., 222 Minn. 10, 23 N.W.2d 15 (1946); Linderman v. Cownie Furs, 234 Iowa 708, 13 N.W.2d 677 (1944). See also 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 22.04(1)(d) (2002) (citing cases). In determining whether an employee is authorized to undertake entertainment or recreational activities on behalf of his employer, the relevant factors include: (1) the extent to which this kind of employee might generally be expected to have this function or authority; (2) the extent to which the recipient of the entertainment is in a position to make decisions that may benefit the employer; (3) the degree of actual authority conferred on this particular employee by specific act or custom; (4) the amount of direct, substantial benefit derived by the employer beyond the intangible value of improvement of employee health and morale; and (5) the extent to which the employer pays for the cost of the entertainment. Larson's Workers' Compensation Law, § 22.04.
The Wisconsin Supreme Court has recognized that work sometimes involves play. In Continental Cas. Co. v. Industrial Comm'n, 26 Wis.2d 470, 132 N.W.2d 584 (1965), the court upheld an award of worker's compensation benefits to the widow of an employee who was injured while returning from pheasant hunting with his brother, his employer's sales manager and a distributor. Upholding the industrial commission's conclusion that the employee was performing a service growing out of and incidental to his employment at the time of the accident, the court found that it was reasonable for the commission to infer that the hunting was incidental to the trip's business purposes. Id. at 473-474, 132 N.W.2d at 586. These purposes included calling on distributors, familiarizing the employer with day-to-day operations of the company and discussing the possible purchase by the sales manager of a one-half interest in the business. Id. In addition, *811 the court relied on the fact that the company president knew of the pheasant hunting trip. Id. Noting the various cases holding that an employee is considered to be acting in the course of employment when injured during a hunting or fishing trip undertaken for the purpose of entertaining customers and directed or authorized by the employer, the court took the view that "the [pheasant] hunting was in the nature of entertaining customers-when play is work and work is play." Id. at 474, 132 N.W.2d at 586.
This case falls into that same category. Although plaintiff had personal reasons for taking the trip to Idaho, a purpose of the trip was to build customer rapport and loyalty with two of his employer's very good customers, Breunig and Hughes. The fact that plaintiff and Hughes may have developed a social relationship outside their business relationship does not change the fact that Hughes was a customer of plaintiff's employer. It is not uncommon for longstanding business relationships to develop into friendships. It is beside the point that Hughes and plaintiff shared a personal interest in hunting and outdoor activities. Any good salesman who wants to promote good will with his customers by taking them on a recreational outing will attempt to tailor the outing to the customers' interests. Furthermore, Zurich does not deny that plaintiff did not have the same kind of personal friendship with Breunig as he had with Hughes or that plaintiff invited Breunig on the trip because of his status as a customer. Allowing Breunig's son and his friend to join the trip was consistent with the business objectives of building loyalty and maintaining a good relationship with Breunig.
There is no dispute that plaintiff's job duties included entertaining and creating good will with his employer's customers. Doing so was consistent with both his employer's expectations and the practices in the industry. Although Zurich points out that there is no evidence that plaintiff's home office even knew about the Idaho trip until plaintiff's return, the undisputed fact is that plaintiff had "standing approval" from his employer to take trips like the one to Idaho. Plaintiff had taken clients on the same hunting trip to Idaho the previous year and had been reimbursed by his employer upon his return.
Zurich points out that each guest on the trip, including Hughes and Breunig, paid for his own outfitting fees and chipped in for food and gas. This fact tends to support Zurich's position that the purpose of the trip was personal. However, the extent to which the employer pays for trip-related expenses is only one of several factors relevant to determining whether plaintiff was authorized by his employer to embark on the Idaho trip. Plaintiff's actual authority to entertain customers is established by the other facts, including his employer's expectation that he entertain clients, its failure to require that plaintiff obtain preapproval for most client-related expenses and its custom of reimbursing plaintiff after his trips.
As a fallback position, Zurich argues that even if the overall purpose of the trip might have been business-related, plaintiff's activities immediately before the accident amounted to a deviation for a personal purpose that fell outside the course of his employment. Zurich argues that there was no business purpose for the fishing with Hughes because only Hughes and plaintiff went fishing that day, they did not discuss business while they fished and they rode Hughes's personal motorcycle and used their own fishing equipment. Zurich's argument is unpersuasive. First, the cases upon which it relies involved the common law doctrine of respondent superior, which does not apply to worker's compensation *812 cases. See Butler v. Industrial Comm'n, 265 Wis. 380, 384-85, 61 N.W.2d 490 (1953). Second, Zurich reads the case law too narrowly when it suggests that worker's compensation does not cover an employee injured while participating in a recreational activity undertaken for the purpose of entertaining clients if the employee is injured at a time when business matters are not being discussed. Zurich's position ignores the fact that it is a common business practice to entertain customers in order to promote business. As the court explained in Ohlsen v. J.G. Dill Co., 222 Minn. 10, 23 N.W.2d 15 (1946), entertaining customers in order to create good will
... is a well-recognized American business practice; and, if an employe while so engaged meets with accidental injury or death, such injury or death is presumed to be within the course of his employment and to arise therefrom, and, in consequence, is covered by the compensation act.
Id., at 17, 23 N.W.2d at 19 (cited in Continental Casualty, 26 Wis.2d at 474, 132 N.W.2d at 586). Having concluded that the purpose of plaintiff's trip was predominantly for the business purpose of entertaining clients and that it was authorized by plaintiff's employer, I am persuaded that the fishing activity in which plaintiff engaged during the trip was "incidental to plaintiff's employment," even though he may not have discussed business with Hughes at that time.
Last, Zurich contends that however plaintiff may be characterizing his trip now, he demonstrated his belief that he was not performing services for his employer in Idaho when he failed to file a worker's compensation claim and sue Zurich for worker's compensation benefits. Without knowing exactly why plaintiff's counsel did not pursue a worker's compensation claim on plaintiff's behalf, I cannot say that his failure to do so shows that plaintiff did not consider himself to be engaged in business activities while on the Idaho trip. (Although plaintiff's lawyer submitted a letter to the court dated April 15, 2003, in which he explained why he did not pursue a worker's compensation claim, his representations are not part of the evidence on this summary judgment motion.)
In sum, the undisputed facts show that plaintiff was performing services growing out of and incidental to his employment at the time of the accident. Accordingly, Aetna has no responsibility for paying plaintiff's medical expenses.

ORDER
IT IS ORDERED that the motion of defendant Aetna Life Insurance Company for summary judgment, as construed by the court, is GRANTED. IT IS DECLARED that the policy issued by defendant Aetna Life Insurance Company affords no coverage for plaintiff's medical expenses arising out of his injuries in June 2001. Plaintiff James H. Bechen's motion for injunctive relief directing immediate payment of his medical bills is DENIED. The clerk of court is directed to enter judgment in favor of Aetna Life Insurance Company and close this case.